SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**State v. T.J.M.** (A-76-12) (072419)

**Argued September 8, 2014 -- Decided January 13, 2015**

**LaVECCHIA, J., writing for a unanimous Court.**

In this appeal as of right, the Court considers four events during defendant's trial that were perceived by a dissenting member of the Appellate Division as having the cumulative effect of rendering defendant's trial unfair.

At the time of the events that led to the charges in this case, defendant lived with his girlfriend, who was the mother of Chloe,[1] the victim. According to Chloe, defendant first sexually abused her when she was approximately eight years old. Chloe recalled several instances of abuse, which occurred alternatively in the family's home or in defendant's van over a roughly four-year period. The trial testimony revealed that during the years immediately afterward, Chloe performed poorly in school and had run-ins with the law, resulting in spending time in juvenile detention centers. Eventually, Chloe told her mother about the abuse and identified defendant as the abuser. Chloe subsequently provided a statement to detectives, who arrested defendant.

Defendant was charged with two counts of second-degree sexual assault, one count of first-degree aggravated sexual assault, and one count of second-degree endangering the welfare of a child. At a pretrial hearing, the trial court determined that defendant's six-year-old conviction for resisting arrest – the result of a guilty plea – would be admissible to impeach him. The court instructed counsel that the prosecutor would be permitted to ask whether defendant had "been previously convicted of a resisting charge that arose out of a DWI stop." In addition, the court clarified that defense counsel would be limited in any cross-examination regarding Chloe's involvement with the juvenile justice system.

Just prior to closing arguments, the prosecutor stated on the record that Chloe intended to be in the courtroom during summations. At the beginning of defense counsel's summation, Chloe walked into the courtroom accompanied by a representative of the prosecutor's office, and she remained in the courtroom through the end of the prosecutor's summation. Defense counsel began his closing argument by referring to Chloe as a "troubled young lady," and he later referenced Chloe's probation history. During the State's summation, the prosecutor said that Chloe had testified "in front of her grandparents, uncles, [and] godfather." The courtroom audience to which the prosecutor referred was not information of record. The prosecutor also asked the jury, "[d]oes it surprise any of you that [Chloe], given her history of just a few years earlier, would end up in the juvenile system? Is that a real shocker?" Once the prosecutor finished his closing statement, defense counsel objected to Chloe's entrance during his summation, but did not request or receive a ruling on that issue. Instead, he acknowledged that Chloe had a right to be there and moved on to his objection to the prosecutor's identification of persons who were present in the courtroom when Chloe testified.

Defense counsel also objected to the prosecutor asking the jurors whether they were "surprised" that Chloe was involved in the juvenile system. In response, the prosecutor noted that defense counsel had led off his closing argument by referring to Chloe as a "troubled young lady." Following those arguments and prior to charging the jury on the law, the court instructed the jury regarding the prosecutor's remarks, stating that the jury's recollection of the evidence governs, not counsels' comments. The jury found defendant guilty of two counts of second-degree sexual assault and one count of second-degree endangering the welfare of a child, and acquitted defendant of aggravated sexual assault. Defendant appealed, arguing that several prosecutorial and trial court errors deprived him of his right to a fair trial.

---

[1] The Court uses pseudonyms to protect the non-defendant parties' identities.

A majority of an Appellate Division panel affirmed in an unpublished opinion. Although the majority identified several prosecutorial improprieties, no issue convinced the majority that defendant's conviction ought to be reversed. One panel member disagreed and filed a dissenting opinion, determining that cumulative error by the prosecutor and trial judge deprived defendant of his right to a fair trial. The dissenting judge focused on the use of defendant's prior conviction for impeachment purposes; the timing of Chloe's entrance into the courtroom; the prosecutor's reference to Chloe's involvement in the juvenile justice system; and, the prosecutor's comment that Chloe testified in the presence of certain family members. In this appeal as of right, the parties are limited to the issues raised by the dissent. Rule 2:2-1(a)(2).

**HELD:** The Court finds no prosecutorial or trial court errors, apart from the prosecutor's comment on the presence of certain people in front of whom Chloe testified, which was adequately addressed by the trial court's appropriate and curing instruction. The points raised by the dissent and defendant have been considered by virtue of this appeal of right, and the Court holds that they do not merit disrupting the jury's verdict.

1. The issue of Chloe's entrance into the courtroom during defense counsel's summation and whether that constituted prosecutorial misconduct has no traction. No objection was clearly raised on the record, defendant failed to advance any evidence at the time to support the claim, and defendant never filed a motion for a mistrial based on the incident. The Court rejects the notion that it should presume bad intent by the prosecution and that it should fault the trial court for not performing a timely investigation. If orchestrated misconduct truly had been suspected by the defense, which was in the best position to assess the timeline of circumstances then unfolding in this trial, then that was the time to insist on exploring any issues concerning persons believed to be involved. Instead, defense counsel receded from asserting the issue at trial, and only on appeal does the argument rise again, phoenix-like. The Court rejects in its entirety the assertion of nefarious intent on the part of this particular prosecutor. (pp. 14-16)

2. In New Jersey, a witness generally may be impeached with evidence of a prior conviction. N.J.R.E. 609. A person who has lived contrary to society's rules and laws by committing crimes should not be able to shield his credibility from the jury and present himself as a law-abiding individual. A defendant plainly experiences prejudice from such evidence, but prior convictions are normally admissible for impeachment purposes, subject to the court's discretion. This Court cannot say that the trial court's assessment of the probative value of the conviction for impeachment purposes was so off the mark as to have rendered defendant's trial unfair. Additionally, the trial judge properly instructed the jury on the limited purpose to which the resisting-arrest conviction could be put. No error occurred as a result of the impeachment use of defendant's prior conviction for resisting arrest. (pp. 17-20)

3. The Court next addresses the arguments that the prosecutor engaged in improper remarks during his summation to the jury and thereby unfairly prejudiced defendant's trial. The first remark – referencing Chloe's involvement in the juvenile justice system – was a response, which did not exceed fair bounds, to defense counsel's exploration of Chloe's juvenile justice system involvement during cross-examination. That remark was, in fact, "based on the evidence in the case and the reasonable inferences from that evidence," and "afford[s] no ground for reversal." State v. Bradshaw, 195 N.J. 493, 510 (2008). The second remark – that Chloe "testified in front of her grandparents, uncles, godfather" – did not suggest wrongdoing on the part of defendant and although the remark could be considered an attempt to bolster Chloe's credibility, the court instructed the jury clearly on the fact that their recollection of the evidence, not counselors' comments on the evidence, is controlling. The trial court's action ameliorated the prejudicial effect of the prosecutor's errant comment about matters not in the record. (pp. 20-23)

4. Where the aggregation of legal errors renders a trial unfair, a new trial is required. Here, however, not only were none of the asserted errors prejudicial, the Court has not found any errors apart from the prosecutor's comment on the presence of certain people in front of whom Chloe testified, which was adequately addressed by the trial court's appropriate and curing instruction. The points raised by the dissent and defendant have been considered by virtue of this appeal of right, and the Court holds that they do not merit disrupting the jury's verdict. (pp. 23-24)

The judgment of the Appellate Division is **AFFIRMED**.

**CHIEF JUSTICE RABNER; JUSTICES PATTERSON, FERNANDEZ-VINA, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE LaVECCHIA's opinion; JUSTICE ALBIN did not participate.**

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

       v.

T.J.M.,

    Defendant-Appellant.


Argued September 8, 2014 – Decided January 13, 2015

On appeal from the Superior Court, Appellate
Division.

Alan L. Zegas argued the cause for appellant
(Mr. Zegas, attorney; Mr. Zegas and Terel L.
Klein, on the briefs).

David A. Malfitano, Assistant Prosecutor,
argued the cause for respondent (John L.
Molinelli, Bergen County Prosecutor,
attorney).

Alexander R. Shalom argued the cause for
amicus curiae American Civil Liberties Union
of New Jersey (American Civil Liberties
Union of New Jersey Foundation, attorneys).

Carol M. Henderson, Assistant Attorney
General, argued the cause for Attorney
General of New Jersey (John J. Hoffman,
Acting Attorney General, attorney).


    JUSTICE LaVECCHIA delivered the opinion of the Court.

    Defendant, T.J.M, was convicted of two counts of second-

degree sexual assault and one count of second-degree endangering

1

the welfare of a child based on events involving his girlfriend's daughter. The Appellate Division affirmed defendant's conviction and sentence, but a dissent brings several issues before this Court in an appeal as of right. We now affirm defendant's conviction.

                                    I.

The following summary provides background to the issues raised by the dissent. The facts summarized were presented during defendant's trial.

At the time of the events that led to the charges, defendant lived with his girlfriend, who was the mother of Chloe,[2] the victim. According to Chloe, defendant, who was deaf but used a combination of hearing aids, sign language, and lip reading to understand and communicate with others, first sexually abused her when she was approximately eight years old. In her testimony, Chloe recalled several instances of abuse, which occurred alternately in the family's home or in defendant's van over a roughly four-year period.

The trial testimony revealed that defendant and Chloe's mother eventually split up and defendant moved out of the home. During the years immediately afterward, Chloe performed poorly in school and had run-ins with the law, resulting in her

---

[2] We use pseudonyms to protect the non-defendant parties' identities.

2

spending time in juvenile detention centers.  One instance of detention occurred when Chloe was fifteen years old, after she violated the terms of her probation.  While speaking with a social worker at the detention center, Chloe disclosed for the first time that she had been sexually abused, but she did not disclose her abuser's identity or the nature of the abuse. Eventually, Chloe told her mother about the abuse and identified defendant as the abuser.  Chloe subsequently provided a statement to detectives, who arrested defendant.

Relevant to this appeal, defendant was charged with two counts of second-degree sexual assault, N.J.S.A. 2C:14-2(b); one count of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1); and one count of second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a).

At a pretrial hearing, the trial court determined that defendant's six-year-old conviction for resisting arrest -- the result of a guilty plea -- would be admissible to impeach him. That conviction stemmed from a vehicle stop on suspicion of driving while intoxicated (DWI).  When making its ruling, the court instructed counsel that the prosecutor would be permitted to ask whether defendant had "been previously convicted of a resisting charge that arose out of a DWI stop."  In a related pre-trial ruling, the court also clarified that defense counsel

3

would be limited in any cross-examination regarding Chloe's involvement with the juvenile justice system.

During the trial, the State presented testimony from Chloe, the counselor to whom Chloe had first made the sexual-abuse allegation, and an expert witness. Chloe recounted particular aspects of the abuse, including specific acts, where on her body they were performed, and the context and locations in which the abuse occurred. Defendant presented character witnesses and testified through an interpreter. Defendant denied abusing Chloe and refuted specifics regarding Chloe's recitation of the incidents.

Just prior to closing arguments, the prosecutor stated on the record that Chloe intended to be in the courtroom during summations, but that she could not stay for any afternoon proceedings. After hearing from both parties regarding whether their respective summations should straddle a break for lunch, the trial court determined that both sides would give their closing arguments prior to the lunch break. Immediately after that colloquy, the court brought the jury into the courtroom, gave a brief instruction, and turned the floor over to defense counsel.

At the beginning of defense counsel's summation, Chloe walked into the courtroom accompanied by a representative of the prosecutor's office. She remained in the courtroom through the

4

end of the prosecutor's summation.  Defense counsel began his closing argument by referring to Chloe as a "troubled young lady," and he later referenced Chloe's probation history.

During the State's summation, the prosecutor said that Chloe had not wanted to be in court to relive the events, but had nevertheless testified "in front of her grandparents, uncles, [and] godfather."  The courtroom audience to which the prosecutor referred was not information of record.  The prosecutor also discussed Chloe's involvement with the juvenile justice system and asked the jury, "[d]oes it surprise any of you that [Chloe], given her history of just a few years earlier, would end up in the juvenile system?  Is that a real shocker?"

Once the prosecutor finished his closing statement, defense counsel objected to Chloe's entrance during his summation, and the following colloquy ensued:

> [DEFENSE COUNSEL]:  I want the record to also reflect it was after I started my opening argument that the victim came into the courtroom with some representative I believe from the Prosecutor's Office and sat down, after defense counsel got started doing the closing argument that they paraded the alleged victim into the courtroom.
>
> THE COURT:  You're making a point that they waited specifically, [counsel]?
>
> [DEFENSE COUNSEL]:  I believe so, Judge.
>
> [PROSECUTOR]:  Judge, first of all I don't know what that objection is.  She certainly has every right to come into the courtroom and

5

be seated and she was not in the least bit distracting and there's no other objection. Certainly I'm sure he's not objecting to her coming into the courtroom. I don't know what that objection is. She's allowed to be here. His whole family has been here.

[DEFENSE COUNSEL]: She is allowed to be here. Let's address the godfather and the uncle being present when she testified.

Thus, defense counsel did not request or receive a ruling on the issue raised about Chloe's entrance into the courtroom. Instead, he acknowledged that Chloe had a right to be there and moved on to his objection to the prosecutor's identification of persons who were present in the courtroom when Chloe testified.

Defense counsel also objected to the prosecutor asking the jurors whether they were "surprised" that Chloe was involved in the juvenile system. In response, the prosecutor noted that defense counsel had led off his closing argument by referring to Chloe as a "troubled young lady."

Following those arguments and prior to charging the jury on the law, the court instructed the jury regarding the prosecutor's remarks, stating that the jury's recollection of the evidence governs, not counsels' comments.

The jury found defendant guilty of two counts of second-degree sexual assault, N.J.S.A. 2C:14-2(b), and one count of second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a), and acquitted defendant of aggravated sexual

6

assault, N.J.S.A. 2C:14-2(a)(1).  Following defendant's conviction and sentencing, he appealed, arguing that several prosecutorial and trial errors deprived him of his right to a fair trial.

A majority of an Appellate Division panel affirmed in an unpublished opinion.  Although the majority identified several prosecutorial improprieties, no issue convinced the majority that defendant's conviction ought to be reversed.

One panel member disagreed and filed a dissenting opinion, determining that cumulative error by the prosecutor and trial judge deprived defendant of his right to a fair trial.  The dissent addressed the identified errors in light of the trial's evidentiary posture, highlighting the paucity of the State's evidence and that both sides' likelihood of success hinged on credibility determinations.

Specifically, the dissent characterized the prior-conviction evidence as unrelated and dissimilar to the offense charged, concluding that admitting that evidence was an abuse of discretion where the case turned largely on the credibility of the victim and defendant.  The dissent also stated that the prosecutor, in his summation, had improperly bolstered Chloe's credibility and suggested that defendant's alleged victimization of Chloe had led her on a path of unlawful conduct.

Finally, the dissenting judge determined that the State had deliberately and improperly timed Chloe's entrance into the courtroom to coincide with defense counsel's summation in order to distract from the defense's closing argument and evoke sympathy for Chloe. On this basis alone, the dissent considered the reversal of defendant's conviction necessary. The judge stated:

> Although my colleagues conclude that we should assume this event was accidental because there was no "competent evidence" that it was intentional, I would state the question in the opposite fashion and assume it was intentional because there was no evidence that Chloe simply wandered into the courtroom at that particular moment. Indeed, . . . the State concedes that Chloe was brought into the courtroom by a representative of the prosecutor's office. When defense counsel objected, the assistant prosecutor did not assert that Chloe's entrance was merely a coincidence nor did he deny it was choreographed. Instead, the assistant prosecutor correctly -- but irrelevantly -- argued that Chloe had a right to be present in the courtroom. That was certainly true, but the prosecution did not have the right to distract the jury in this manner, which, as the majority notes, was not a first for this assistant prosecutor. See [State v. T.J.M., No. A-2040-10 (App. Div. Mar. 5, 2013) (slip op. at 28) (citing State v. Mosby, No. A-3233-08 (App. Div. Apr. 19, 2010))].

> My colleagues are unwilling to assume that this stunt was orchestrated by the assistant prosecutor. For the reasons I have mentioned -- the assistant prosecutor's prior bad act in Mosby, the fact that Chloe was escorted in by a representative of the prosecutor's office, and the assistant

8

prosecutor's "non-denial denial" when defense counsel objected -- I am not willing to assume Chloe's entrance was an innocent or coincidental occurrence. Naiveté has its limits. The circumstances can lead only to the conclusion that the State was responsible and, in a case as close as this, it was enough -- even on its own -- to require our conclusion that the bounds of advocacy were exceeded and warrant correction through the ordering of a new trial.

[(Footnotes omitted).]

Defendant now appeals to this Court as of right.

## II.

As noted, the dissent focused on four events during defendant's trial that were perceived as having the cumulative effect of rendering defendant's trial unfair. Since this is an appeal as of right, the parties are limited to the issues raised by the dissent, R. 2:2-1(a)(2), which we repeat here in a distilled form: (1) permitting the State to use defendant's six-year-old conviction for fourth-degree resisting arrest for impeachment purposes; (2) the timing of Chloe's entrance into the courtroom during defense counsel's summation; (3) the prosecutor's comment in summation that referred to Chloe's life after the offenses and her involvement in the juvenile justice system; and (4) the second remark by the prosecutor in closing, that Chloe testified in the presence of certain family members, which the dissent viewed as an attempt to bolster her credibility.

9

We now address, in turn, the parties' arguments, which are based on the dissent's treatment of those issues.

A.

Before this Court, defendant emphasizes the prejudice caused by the prosecutor "parading" Chloe into the courtroom and disrupting the jury's attention during defense counsel's summation. Defendant asserts that the disruption was intentional. Defendant argues that Chloe's entrance should not be regarded as innocent because of the asserted involvement of the same prosecutor in another trial involving the questionable timing of a witness's appearance in the courtroom (as discussed in an unpublished Appellate Division opinion). Rather, defendant contends that the State had an obligation to come forward with countervailing proof that the entrance was not intentional. The dissent was persuaded by that argument and defendant presses the same argument before this Court.

Defendant also argues that the use of the six-year-old conviction for resisting arrest was of limited impeachment value and that, in a closely poised case such as this one where much depended on credibility, the court erred in its exercise of discretion by allowing use of the prior conviction. Defendant asserts that the conviction provides little substantive assistance in the assessment of defendant's credibility while causing great prejudice.

10

Finally, defendant claims that the two comments made by the prosecutor in summation -- and identified as prejudicial by the dissent -- produced an unfair result, and together exemplify a course of conduct that stretched beyond the fair use of the record evidence.

B.

According to the State, the timing of Chloe's entrance was not, and should not be presumed to be, misconduct by the prosecution team. The State notes that defendant's trial counsel did not assert an objection at the time that would have allowed the issue to be explored on the record. Further, the State highlights defense counsel's concession during the post-summation colloquy that Chloe had the right to be present in the courtroom, and defense counsel's subsequent abandonment of any argument on the issue.

As for the other issues raised by the dissent and by defendant on appeal to this Court, the State contends that the standard for allowing prior convictions to be used for impeachment purposes was not contravened by the trial court's exercise of discretion. Finally, the State asserts that the two summation arguments were not capable of bringing about an unjust result.

C.

We granted amicus curiae status in this matter to the New Jersey Attorney General and the American Civil Liberties Union of New Jersey (ACLU).

Addressing the key issue argued by defendant and of concern to the dissent, the Attorney General presents a factually based argument, assembled from the transcript, which maps the events that led to Chloe's entrance into the courtroom after closing arguments had commenced. According to the Attorney General's presentation, the timing of Chloe's entrance was not nefariously coordinated. Rather, it was the natural result of two factors: (1) the distance Chloe had to travel to the courtroom from the courthouse building where she was waiting for summations to begin; and (2) the immediate resumption of on-the-record proceedings and defense counsel's summation following the charge conference where the prosecutor stated that Chloe intended to be present for closing arguments.

The Attorney General also argues, consistent with the State's arguments, that use of the resisting-arrest conviction did not contravene the standard for admission of prior convictions for impeachment purposes. Moreover, the Attorney General argues that the prosecutor's summation comment about Chloe's juvenile justice history merely responded to the defense's characterization of Chloe as "troubled." As for the prosecutor's reference to family members identified as being

12

present when Chloe testified -- a matter not of record -- the Attorney General asserts that such a comment cannot comprise harmful error where the trial court properly instructed the jury that an attorney's argument does not constitute evidence.

Last, the Attorney General urges us to refrain from using the phrase "prosecutorial misconduct" except in cases where ethical rules are violated, arguing that the indiscriminate use of that phrase to describe any prosecutorial misstep demeans the professional standing of New Jersey prosecutors. Further, the Attorney General asks this Court to remove the stigma associated with prosecutorial mistakes by making clear that "errors" and "mistakes" should not be termed "misconduct."

The ACLU urges this Court to establish a registry of court-identified prosecutorial misconduct to enable future trial courts and defense counsel to track repetitive instances of prosecutorial error and avoid having individual courts miss the larger picture of rogue prosecutors who fail to adhere to proper standards of conduct. The ACLU asserts that the absence of such a tracking system, and the general practice in opinions of not identifying prosecutors found to have made errors, allows "recidivist" prosecutors to operate with impunity and endangers public confidence in the criminal justice system. Thus, the ACLU contends, this Court should employ its disciplinary,

13

rulemaking, and supervisory authority to create a prosecutorial-error registry.

## III.

We begin with the issue of Chloe's entrance into the courtroom during defense counsel's summation and whether that constituted prosecutorial misconduct because the timing assertedly was orchestrated to disrupt the jury's attention from the defense and to evoke sympathy for the victim. This issue has no traction for several reasons.

First, no objection was clearly raised on the record at the time the trial court could have explored the issue with trial counsel. Defense counsel raised a tepid complaint about the disruption of his summation, but when the trial court expressly asked defense counsel whether he was asserting that the State had intentionally caused the timing of Chloe's entrance in the courtroom, defense counsel dropped the topic and began to argue another issue instead. Defendant failed to advance any evidence at the time to support the claim and never filed a motion for a mistrial based on the incident.

Second, the defense also argues, as it did before the Appellate Division, that we should presume bad intent by the prosecution and should fault the trial court for not performing a timely investigation. The dissent's adoption of that extreme approach lifted this defense issue and argument to an appeal as

14

of right.  We reject the notion that such intent should be presumed.  We will not engage in such a presumption, particularly in circumstances such as here where the parties to the event dropped the issue when it could have been explored.  If orchestrated misconduct truly had been suspected by the defense, which was in the best position to assess the timeline of circumstances then unfolding in this trial, then that was the time to insist on exploring any issues concerning persons believed to be involved.  Instead, defense counsel receded from asserting the issue at trial, and only on appeal does the argument rise again, phoenix-like.

Finally, in addition to declining to accept that presumption, we reject the dissent's assertion, adopted by defendant on appeal, that the circumstances here "can lead only to the conclusion that the State was responsible."  Indeed, we note that a careful review of the record reveals no support for this defense claim.  Both the State and the Attorney General affirmatively represented to this Court that a mere timing glitch in the unfolding of trial events the morning of May 18, 2010 led to Chloe entering the courtroom after defense counsel had begun his closing statement.  In particular, the Attorney General's brief sifted through the transcript, pointing out that the State informed the court and defense counsel that Chloe was being notified so she could come to the courtroom to hear the

15

closing statements.  Further, the Attorney General noted that Chloe had to walk from another part of the courthouse complex to be present for summations.  In sum, the record reveals that the court determined, in consultation with counsel, to proceed immediately from the charge conference to summations.  And, in forging ahead in order to complete summations prior to the lunch break, all parties were on notice that Chloe would be returning to the courtroom for the closing arguments.

Following that timeline of the proceedings, it is clear that it took a short while for Chloe to traverse the distance from one courthouse-complex building to another where the trial was being conducted.  Moreover, Chloe's entrance along with a member of the prosecutor's unit is unremarkable.  We disagree with the assertion that nefarious intent on the part of this particular prosecutor is a viable argument;[3] that argument is factually unsound, and we reject it in its entirety.

---

[3] We base our determination of this matter on the record of this case as established by the transcript, not on inferences to be derived from unpublished opinions of this state's courts.  To the extent that the ACLU invites us to consider such an unpublished opinion as evidence supporting prosecutorial misconduct, we decline to do so, as that "evidence" is not part of the trial record.

We likewise decline the ACLU's invitation to create a registry of prosecutors who have repeatedly been admonished for engaging in prosecutorial error, as the Attorney General would have it denominated.  Nothing prevents others from publishing views on such issues as decided in published and unpublished opinions of the appellate courts of this state.  See, e.g., Alexander Shalom & George C. Thomas III, ACLU-NJ, Trial and Error:  A

16

IV.

Turning to the next issue, we address the trial court's admission of defendant's conviction for resisting arrest.

In New Jersey, a witness generally may be impeached with evidence of a prior conviction.  See N.J.R.E. 609 ("For the purpose of affecting the credibility of any witness, the witness'[s] conviction of a crime shall be admitted unless excluded by the judge as remote or for other causes.");[4] State v. Sands, 76 N.J. 127, 147 (1978) (holding that prior conviction shall be admissible evidence for impeachment purposes unless danger of undue prejudice substantially outweighs probative value).  The underlying rationale to that evidential rule is the belief that a person who has lived contrary to society's rules and laws by committing crimes should not be able to shield his credibility from the jury and present himself as a law-abiding individual.  See State v. Sinclair, 57 N.J. 56, 64 (1970).  A defendant plainly experiences prejudice from such evidence, but prior convictions are normally admissible for impeachment purposes, subject to the court's discretion.  See State v.

_____

Comprehensive Study of Prosecutorial Conduct in New Jersey (2012), available at https://www.aclu-nj.org/files/3213/4815/6942/ACLU-NJ_Pros_Cond_BW.pdf.  Further, to the extent it is ever necessary, the attorney disciplinary process is public and its decisions and judgments are a matter of public record.

[4] This rule was amended in 2014.  See infra note 4.

17

Harris, 209 N.J. 431, 442 (2012) (citing State v. Hamilton, 193 N.J. 255, 256 (2008); State v. Whitehead, 104 N.J. 353, 358 (1986)). Thus, we review such admissibility determinations under an abuse of discretion standard. See State v. Buda, 195 N.J. 278, 294 (2008).

In this matter, the dissent disagreed with the admission of defendant's six-year-old resisting-arrest conviction. While noting the deferential standard of review, which prevents an appellate court from deciding such evidential matters as if sitting as the trial judge, the dissent believed that the trial court abused its discretion here. The dissent maintained that when a case turns on credibility, a trial court should exercise more heightened concern about the admission of a prior conviction that only theoretically illuminates an offender's credibility. Defendant presently advances those same arguments.

Like the majority of the appellate panel that first reviewed this appeal, we are not persuaded to substitute our judgment for that of the trial court on this evidential ruling. It was for the trial court to assess defendant's prior conviction's probative value in light of its remoteness, and we cannot say that the trial court erred in that judgment. The question is not whether we would have made a different determination in the first instance. Rather, we apply the normal, deferential standard and conclude that the trial court

18

did not abuse its discretion when it permitted the use of the prior conviction for impeachment purposes. The conviction was not stale by the standard in use for assessing remoteness. See Harris, supra, 209 N.J. at 436, 444-45 (holding two prior convictions more than ten years old admissible where disorderly-persons offenses "bridge[d] the gap").[5] And, we cannot say that the trial court's assessment of the probative value of the conviction for impeachment purposes was so off the mark as to have rendered defendant's trial unfair. Although the dissent viewed the conviction as only "theoretically" speaking to credibility, it is at least as probative of credibility as prior convictions used in numerous other proceedings. See, e.g., State v. Lagares, 247 N.J. Super. 392, 396-97 (App. Div. 1991) (affirming State's use of seven-year-old conviction for possession of marijuana as "clearly hav[ing] a bearing on . . . credibility"), rev'd on other grounds, 127 N.J. 20 (1992); see also State v. Hawthorne, 49 N.J. 130, 145 (1967) (Weintraub, C.J., concurring) (noting the "widespread belief that conviction for crime has 'probative value' with respect to the credibility of a witness"), overruled on other grounds by Sands, supra, 76 N.J. at 147.

---

[5] In the wake of Harris, supra, this Court adopted amendments to N.J.R.E. 609 that favor the general admissibility of prior-conviction evidence that is less than ten years old.

19

Additionally, we note that the trial judge properly instructed the jury on the limited purpose to which the resisting-arrest conviction could be put.  In light of this Court's consistently held belief that prior-conviction evidence has probative value for impeachment purposes, as assessed by the trial court, see Harris, supra, 209 N.J. at 442, the trial court's allowance of such evidence here cannot be said to be a "clear error of judgment," State v. Brown, 170 N.J. 138, 147 (2001) (citation and internal quotation marks omitted).

We therefore conclude that no error occurred as a result of the impeachment use of defendant's prior conviction for resisting arrest.

V.

We turn last to address the arguments that the prosecutor engaged in improper remarks during his summation to the jury and thereby unfairly prejudiced defendant's trial.

The first offending remark -- "[d]oes it surprise any of you that [Chloe], given her history of just a few years earlier, would end up in the juvenile system?  Is that a real shocker?" -- came during a discussion of Chloe's involvement with the juvenile justice system.  The trial court previously had limited the extent to which defense counsel could cross-examine Chloe about her juvenile record; however, questioning on that topic was not restricted entirely, and the defense did use that tactic

20

when cross-examining her. Pointing to the record, the State identifies instances where defense counsel (1) elicited the dates Chloe was on probation, how and when she violated her probation, when warrants were issued for her arrest, and details of her stay at juvenile detention centers; and (2) questioned Chloe regarding her marijuana usage. As the Appellate Division majority also noted, Chloe testified that she once ran away from home while on probation because she was "fed up with life."

Based on the record that was developed, we are compelled to agree with the argument that the prosecutor's first remark was a response, which did not exceed fair bounds, to defense counsel's exploration of Chloe's juvenile justice system involvement during cross-examination. The comment, however colloquially phrased, also may be regarded as a legitimate attempt to combat the reasonable inferences flowing from Chloe's "fed up with life" testimonial remark and defense counsel's characterization of Chloe as a "troubled young girl." The prosecutor sought to make a reasonable connection between her allegation of abuse and the conduct that brought her into the juvenile justice system. Further, as the Appellate Division majority noted, "[o]ne could reasonably infer that [Chloe] was 'fed up' and wanted to run away from home in part because she had been sexually abused." That is also a fair inference from this record. Thus, we conclude that the first allegedly offending remark was, in fact,

21

"based on the evidence in the case and the reasonable inferences from that evidence," and "afford[s] no ground for reversal." State v. Bradshaw, 195 N.J. 493, 510 (2008) (citation and internal quotation marks omitted).

The second remark -- that Chloe "testified in front of her grandparents, uncles, godfather" -- was analogized by the dissent to the improper summation that occurred in State v. Farrell, 61 N.J. 99, 102 (1972). However, the reliance on Farrell is misplaced because the circumstances of that case are far different from the present one. The prosecutor in Farrell repeatedly stressed in summation that the defendant had caused four persons, whose presence was not in the record, to be in the courtroom for the purpose of intimidating a State witness. Ibid. That concerned this Court when the matter was on review. We emphasized that the prosecutor not only had bolstered the witness's credibility, but also implied that the defendant had "attempted to obstruct justice." Id. at 105. We also identified another comment that implied that "the prosecutor had personal knowledge of the defendant's guilt," id. at 103, and noted that the trial court had given no curative instructions on those matters, id. at 107. Thus, in reversing the defendant's conviction in Farrell, we were focusing on several errors connected to the remark, which had the cumulative effect of bolstering witness credibility.

22

Here, the prosecutor's remark, which did not suggest wrongdoing on the part of defendant, is the lone similarity to Farrell.  Although the remark could be considered an attempt to bolster Chloe's credibility, the court instructed the jury clearly on the fact that their recollection of the evidence, not counselors' comments on the evidence, is controlling.  We act on the belief and expectation that jurors will follow the instructions given them by the court.  See State v. Ross, 218 N.J. 130, 152 (2014) (citing State v. Winder, 200 N.J. 231, 256 (2009)).  The trial court's action ameliorated the prejudicial effect of the prosecutor's errant comment about matters not in the record.  While it would have been preferable for the court to have addressed the potential bolstering effect of the comment expressly, we do not find that to provide a sufficient basis for reversing defendant's conviction.

## VI.

Finally, we address defendant's assertion that the cumulative trial and prosecutorial errors denied his right to a fair trial.

Where the aggregation of legal errors renders a trial unfair, a new trial is required.  See State v. Wakefield, 190 N.J. 397, 538 (2007).  "If a defendant alleges multiple trial errors, the theory of cumulative error will still not apply

23

where no error was prejudicial and the trial was fair." State v. Weaver, 219 N.J. 131, 155 (2014).

Here, not only were none of the asserted errors prejudicial, we have not found any errors apart from the prosecutor's comment on the presence of certain people in front of whom Chloe testified, which was adequately addressed by the trial court's appropriate and curing instruction. Thus, while noting the dissenting judge's concern with the issues on which he would have reversed this conviction and ordered a new trial, we conclude that such action is not warranted. The points raised by the dissent and defendant have been considered by virtue of this appeal of right, and we hold that they do not merit disrupting the jury's verdict.

VII.

The judgment of the Appellate Division is affirmed.

CHIEF JUSTICE RABNER; JUSTICES PATTERSON, FERNANDEZ-VINA, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE LaVECCHIA's opinion. JUSTICE ALBIN did not participate.

24

SUPREME COURT OF NEW JERSEY

NO.    A-76                     SEPTEMBER TERM 2012

ON APPEAL FROM       Appellate Division, Superior Court


STATE OF NEW JERSEY,

        Plaintiff-Respondent,

                v.

T.J.M.,

        Defendant-Appellant.


DECIDED         January 13, 2015
                Chief Justice Rabner            PRESIDING
OPINION BY         Justice LaVecchia
CONCURRING/DISSENTING OPINION BY
DISSENTING OPINION BY


| CHECKLIST | AFFIRM | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | ------------------------ | ----------------------- |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| | 6 | |

1