# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1330-24

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

OSCAR O. GOMEZMIRALDA,
a/k/a OSCAR O. GOMEZ
MIRALDA,

     Defendant-Appellant.

_____

Argued March 25, 2026 – Decided June 16, 2026

Before Judges Mayer and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 23-04-0827.

Paul D. Colangelo argued the cause for appellant (DeCosmo Law, attorneys; Paul D. Colangelo, on the briefs).

Linda A. Shashoua, Assistant Prosecutor, argued the cause for respondent (William E. Reynolds, Atlantic County Prosecutor, attorney; Courtney Cittadini, Section Chief, and Linda A. Shashoua, on the brief).

PER CURIAM

Defendant Oscar O. GomezMiralda appeals his convictions for first-degree aggravated sexual assault and second-degree endangering the welfare of a child. We affirm.

I.

On February 1, 2023, South Jersey Medical Center contacted the Division of Child Protection and Permanency to report a sexual assault allegation of a five-year-old female child, Heidi, living with her mother, Kate, and defendant.[1] On February 16, Detectives Estefania Giraldo-Gomez and Giphsys Howard with the Special Victims Unit of the Atlantic County Prosecutor's Office interviewed Kate.

Kate told the detectives she lived with Heidi and defendant in Atlantic City and had been in a relationship with defendant for approximately three years. In September 2022, she began to "notice that something was wrong." She usually left for work at 5:00 a.m., leaving Heidi in defendant's care until a babysitter arrived later in the morning. One day, Heidi told Kate she did not

---

[1] We use pseudonyms to maintain the confidentiality of sealed records, R. 1:38-11, and to protect the privacy of victims, R. 1:38-3(c)(12).

want defendant entering her bedroom but did not explain why. Kate installed a hidden camera in Heidi's bedroom.

On December 25, while Heidi was asleep in her bed, Kate set the hidden camera to recording mode. When Kate returned from work, she reviewed the footage and saw defendant appearing to assault Heidi under the covers in the child's bed. When Kate showed Heidi the video, Heidi began to cry. Kate asked Heidi what defendant was doing under the covers. Heidi said defendant pulled her pants down, lifted her leg and touched her in her private parts.

Kate confronted defendant, who denied any wrongdoing. He threatened Kate that if she reported the incident, he would "make trouble" for her family members in Honduras. Fearing the consequences, Kate did not file a complaint. Instead, she moved to a new address and blocked all further contact with defendant.

Kate provided detectives with a copy of the video. Afterward, Detective Giraldo-Gomez interviewed Heidi. She used the "Child First Finding Words" protocol which helps interviewers communicate at the child's developmental level. The protocol aims to enable a young child to tell law enforcement what happened without coercion, coaching, or leading. The detective used an easel

A-1330-24

drawing, anatomical drawings, diagrams, and anatomical dolls to help Heidi communicate accurately without relying on her verbal skills.

Heidi identified defendant as the man who had touched her. She described sitting on the bed playing with her tablet while defendant lay next to her: "[h]e took his clothes off . . . . And he took my clothes off." Detective Giraldo-Gomez asked Heidi to use the anatomical dolls to show what happened after defendant removed her clothing. Using dolls, she said, "he put this inside of me." She continued, "he put it inside of me, like, here but it didn't fit." Heidi demonstrated how defendant touched her, saying it happened "one time, or two times, or three times." Heidi continued, "and it happened and he put that inside of me here . . . and he would make strange movements" with "[a] part of his body," demonstrating with the dolls.

On April 26, 2023, an Atlantic County grand jury returned an indictment, charging defendant with: first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1) (count 1); second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1) (count 2); and first-degree witness tampering, N.J.S.A. 2C:28-5(a)(1) (count 3).

On June 18, 2024, the trial court admitted Heidi's recorded statement pursuant to the "tender years" exception to the hearsay rule, N.J.R.E. 803(c)(27).

4

The court also admitted a portion of defendant's recorded statement made to police following arrest, finding defendant had waived his Miranda rights.[2]  The State sought to admit video narration testimony from Detective Giraldo-Gomez of the sexual assault pursuant to N.J.R.E. 701 and State v. Watson, 254 N.J. 558 (2023).

On June 19, 2024, the court granted the State's request, limiting the detective's narration to three points: when Kate installed the camera, when Heidi sat on the bed, and when Heidi woke up and started playing on a tablet.  The court also allowed a Spanish-to-English translation of the conversation between Heidi and defendant.

Following these evidentiary rulings, the case proceeded to trial.  Heidi, Kate, and both detectives testified for the State.  Defendant called two character witnesses and did not testify.  The jury returned guilty verdicts on counts one and two and acquitted defendant on count three.  On December 2, 2024, the court sentenced defendant on count one to a mandatory twenty-five years' term with no period of parole eligibility pursuant to the Jessica Lunsford Act, N.J.S.A. 2C:14-2.  On count two, the court imposed a concurrent seven-year term.

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).  The hearsay and Miranda rulings are not subjects of this appeal.

A-1330-24

Defendant appealed, raising the following arguments, none of which he raised at trial:

POINT I

THE TRIAL COURT COMMITTED PLAIN ERROR IN FAILING TO ASCERTAIN WHETHER [HEIDI] WAS COMPETENT TO TESTIFY AT A CRIMINAL TRIAL BY OMITTING ANY INQUIRY OF [HEIDI]'S UNDERSTANDING OF THE DUTY TO TELL THE TRUTH. (NOT RAISED BELOW.)

POINT II

IT WAS PLAIN ERROR FOR THE TRIAL COURT TO PERMIT WITHOUT CURATIVE INSTRUCTION THE PROSECUTOR'S REMARKS IN SUMMATION VOUCHING FOR [HEIDI], ATTRIBUTING [HEIDI]'S NONRESPONSIVENESS IN COURT TO [DEFENDANT]'S PRESENCE IN THE COURTROOM, AND REFERRING TO [DEFENDANT]'S SILENCE AT TRIAL, ALL OF WHICH DEPRIVED [DEFENDANT] OF A FAIR TRIAL. (NOT RAISED BELOW).

POINT III

THE TRIAL COURT ACTED IN PLAIN ERROR IN ALLOWING DETECTIVE GIRALDO-GOMEZ TO DESCRIBE THE VIDEO THAT SHE COLLECTED FROM [KATE] TO DEPICT [HEIDI] "BEING SEXUALLY ASSAULTED" AND IN NOT REQUIRING ADEQUATE FOUNDATION FOR HER TESTIMONY THAT "BRAZZERS" WAS AN ADULT PORNOGRAPHY WEBSITE. (NOT RAISED BELOW).

6

POINT IV

THE STATE'S ARGUMENT THAT THE TRIAL COURT COMMITTED NO PLAIN ERROR IN FAILING TO ASCERTAIN WHETHER [HEIDI] WAS COMPETENT TO TESTIFY AT A CRIMINAL TRIAL BY OMITTING ANY INQUIRY ABOUT [HEIDI]'S UNDERSTANDING OF THE DUTY TO TELL THE TRUTH, OR, IN THE ALTERNATIVE, WAS HARMLESS ERROR, NULLFIES THE REQUIREMENT THAT COURTS MEANINGFULLY MAKE COMPETENCE FINDINGS; MOREOVER, THE STATE'S POSITION IGNORES THAT AN ADVERSE FINDING RELATING TO ITS CORE WITNESS DEPRIVED THE APPELLANT OF A POTENT TOOL TO FURTHER ATTACK [HEIDI]'S CREDIBILITY. (NOT RAISED BELOW).

POINT V

THE STATE'S ASSERTION THAT THE PROSECUTOR'S "ISOLATED STATEMENTS" WERE MERELY A RESPONSE TO TRIAL DEFENSE COUNSEL'S SUMMATION IGNORES THE FACT THAT THE PROSECUTOR'S REMARKS RECITED BOTH MATTERS NOT IN EVIDENCE AND IMPLICATED [DEFENDANT]'S EXERCISE OF HIS CONSTITUIONAL RIGHTS, WHILE TRIAL DEFENSE COUNSEL'S COMMENTS ADDRESSED WHAT THE JURY ACTUALLY SAW IN COURT WHEN [HEIDI] TESTIFIED. (NOT RAISED BELOW).

II.

Because defendant did not object to any of the trial court's rulings, we review for plain error. State v. Bueso, 225 N.J. 193, 202 (2016). Plain error is

7

"error not properly preserved for appeal but of a magnitude dictating appellate consideration." Pressler & Verniero, Current N.J. Court Rules, comment 2.1 on R. 2:10-2 (2026). See Rule 2:10-2 ("[a]ny error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result"). The defendant bears the burden of proving plain error. State v. Weston, 222 N.J. 277, 295 (2015).

Witness Competency

Defendant first challenges the trial court's determination that Heidi was competent to testify based on the court's purported failing to undertake "any inquiry of [Heidi]'s understanding of the duty to tell the truth."

N.J.R.E. 601 presumes "[e]very person is competent to be a witness" unless proven otherwise. "Typically, when the witness is an adult, competency hinges in part on the witness's capacity 'to understand the nature and obligations of an oath[.]'" Bueso, 225 N.J. at 204 (alteration in original) (quoting State v. G.C., 188 N.J. 118, 131 (2006)). "That objective is complicated in the case of a child witness, who 'may be incapable of understanding either the concept of divine punishment or the legal implications of false swearing.'" Ibid. (quoting State in Interest of R.R., 79 N.J. 97, 110 (1979)).

"Consequently, '[a]ny ceremony which obtains from an infant a

8

commitment to comply with' the obligation to testify truthfully, 'on pain of future punishment of any kind[,]' satisfies the requirement of an oath."  Ibid. (alterations in original) (quoting R.R., 79 N.J. at 111).  "With substantial discretion regarding the form of questioning, the trial court's task is to determine whether the child witness appreciates the distinction between truth and lies, and comprehends his or her duty to tell the truth."  Id. at 207.

In Bueso, the following exchange occurred between the prosecutor and child witness, the alleged victim of sexual assault:

> [Prosecutor]:  Everything you do today in court, you have to tell the truth.  Do you understand that?
>
> [M.C.]:  Yes.
>
> [Prosecutor]:  So, is it good to tell the truth?
>
> [M.C.]:  Yes.
>
> [Prosecutor]:  And is it bad to tell a lie?
>
> [M.C.]:  Yes.
>
> [Prosecutor]:   And do you understand bad things happen if you tell a lie in court[?]  Do you understand that?
>
> [M.C.]: Uh-un. No.
> [Prosecutor]:   Do you understand that bad things happen if you tell a lie in school?
>
> [M.C.]: Yes.

9

[Prosecutor]: So, just like if you tell a lie in school, if you tell a lie here in this place, the court, bad things happen. Do you understand that?

[M.C.]: Yes.

[Prosecutor]: Okay. So, everything you talk about today has to be the truth. Do you understand that?

[M.C.]: Uh-huh.

[Id. at 198-199 (alterations in original).]

The Court held, "[i]n light of N.J.R.E. 601's preference for the admission of relevant evidence, and the plain error standard that governs th[e] case," the conducted inquiry was sufficient because the witness's testimony reflected her obligation to tell the truth. Id. at 212.

Similarly, in R.R., the Court affirmed the trial court's finding that a four-year-old boy, the alleged victim of a sexual assault, was competent to testify based on the following colloquy:

The Clerk: Will you tell the truth to this [c]ourt?

The Witness: Yes.

The Clerk: Do you believe in God?

The Witness: Yes.

The Clerk: If you lie do you believe that God will punish you?

The Witness: No.

The Clerk: God will not punish you if you tell a lie? Or will he punish you?

The Witness: He will.

The Clerk: He will. The boy is sworn, Judge.

[79 N.J. at 104.]

In G.C., the Court determined the defendant's five-year-old daughter, the alleged victim of his sexual abuse, was competent to testify because the trial judge questioned the child, who stated it was "not good" to tell a lie and "good to tell the truth." 188 N.J. at 121, 125-26.

Although the Bueso Court commented that "[t]he questioning of the children in R.R. and G.C. was not optimal," "both decisions illustrate the basic elements of an adequate competency determination." 225 N.J. at 210. "In each inquiry, the testimony established that the child understood the distinction between telling the truth and lying, that he or she understood that it was important to tell the truth in court, and that he or she anticipated negative consequences in the event of a lie." Ibid. (citing G.C., 188 N.J. at 125-28, 133; R.R., 79 N.J. at 104, 113-14). The Court in both cases held the trial court properly permitted the children to testify because N.J.R.E. 601 presumes a witness's competency. Id. at 210-11.

11

Likewise, the trial court's determination that Heidi was competent to testify was sufficient, as shown by the following exchange:

THE COURT:  . . . So, [Heidi], do you know the difference between right and wrong?

[HEIDI]:  How?

THE COURT:  How?  Well, let me ask you this.  If I told you that my dress was black, would that be the truth?

[HEIDI]:  Yes.

THE COURT:  Okay.  If I told you that your dress was black, would that be the truth?

[HEIDI]:  No.

THE COURT:  No.  So that wouldn't be the truth, right?  So you know the difference between the truth and not the truth, right?

[HEIDI]:  Yeah.

THE COURT:  So do you always try to tell the truth?

[HEIDI]:  Yes.

THE COURT:  Okay.  So you know when you're here today that's all we want you to do is try to tell the truth.  Do you understand that?

[HEIDI]:  Yes.

THE COURT:  Okay.  So when you're asked questions just try to tell the truth.  Okay?

12

[HEIDI]: Okay.

As in <u>Bueso</u>, <u>R.R.</u>, and <u>G.C.</u>, this colloquy demonstrates "the basic elements of an adequate competency determination." <u>Ibid.</u> Heidi demonstrated she knew the difference between the truth and a lie and should seek to tell the truth in response to the State's questioning. Although the court did not explicitly address the negative consequences of lying, it reiterated three times to the child that she "try to tell the truth." <u>See</u> <u>ibid.</u> Because the court established the child understood the difference between truth and lies, tested that understanding, and strongly emphasized the importance of telling the truth, it is reasonable to infer she understood there would be negative consequences for lying.

Even assuming such an inference is somehow error, it was not "clearly capable of producing an unjust result." <u>R.</u> 2:10-2. First, there was other overwhelming evidence of defendant's guilt without the child's testimony—namely, the videorecording of the assault. Second, Heidi's testimony was not pivotal to the State's case. She responded, "I forgot" to nearly every substantive question and did not identify defendant in court—all points defense counsel emphasized in summation.

Prosecutorial Error

Defendant's second argument—that the prosecutor, during summation,

impermissibly vouched for Heidi's non-responsiveness and highlighted defendant's presence in court and his decision not to testify—rests on the following:

> [Heidi]'s statement to Detective Giraldo[-Gomez] took place about six weeks after the assault. Now, it's been about a year and a half since the assault. She's now seven. And she may well have been traumatized enough to forget or to block the assault that happened, or, being seven years old and having to come into this big room with all these people looking at her, with . . . defendant in the room, I would contend that, you know, she's probably very scared, too scared to repeat the allegations that she made, here in open court . . . .

Defendant asserts this statement constitutes "prosecutorial misconduct" depriving him of a fair trial. We disagree.

At the outset, we note the distinction between prosecutorial "error" and "misconduct," as acknowledged by our Supreme Court.

> Last, the Attorney General urges us to refrain from using the phrase "prosecutorial misconduct" except in cases where ethical rules are violated, arguing that the indiscriminate use of that phrase to describe any prosecutorial misstep demeans the professional standing of New Jersey prosecutors. Further, the Attorney General asks this Court to remove the stigma associated with prosecutorial mistakes by making clear that "errors" and "mistakes" should not be termed "misconduct."
>
> [State v. T.J.M., 220 N.J. 220, 230 (2015).]

It is well-established that "[p]rosecutors may not make inaccurate factual or legal assertions during summation, and they must confine their remarks to evidence revealed during trial, and reasonable inferences to be drawn from the evidence." State v. R.A.M., 482 N.J. Super. 439, 452 (App. Div. 2025) (alteration in original) (quoting State v. Rodriguez, 365 N.J. Super. 38, 48 (App. Div. 2003)). "Prosecutors are afforded considerable leeway in closing arguments as long as their comments are reasonably related to the scope of the evidence presented." State v. Clark, 251 N.J. 266, 289-90 (2022) (quoting State v. Frost, 158 N.J. 76, 82 (1999)).

"Prosecutors are permitted 'to make vigorous and forceful closing arguments to juries.'" State v. Atwater, 400 N.J. Super. 319, 335 (App. Div. 2008) (quoting State v. Timmendequas, 161 N.J. 515, 587 (1999)). However, they "must limit their remarks to the evidence," and "refrain from unfairly inflaming the jury." Ibid. (first citing Frost, 158 N.J. at 86; and then citing State v. Johnson, 31 N.J. 489, 511 (1960)).

"To determine whether a prosecutor's improper comments in summation warrant reversal, we assess whether the impropriety was 'so egregious that it deprived the defendant of a fair trial.'" R.A.M., 482 N.J. Super. at 452 (quoting State v. Williams, 471 N.J. Super. 34, 45 (App. Div. 2022)). "Every

prosecutorial misstep will not warrant a new trial." State v. Garcia, 245 N.J. 412, 436 (2021).

"Where there was no objection at the time, there is an inference that the defense did not view the summation as prejudicial in the context of the trial." Atwater, 400 N.J. Super. at 337 (citing Frost, 158 N.J. at 83). "[T]he failure to object suggests that at the time defense counsel did not believe the remarks were prejudicial and the failure to object also deprives the court of an opportunity to take curative action." State v. Atkins, 405 N.J. Super. 392, 401 (App. Div. 2009) (citing State v. Bauman, 298 N.J. Super. 176, 207 (App. Div. 1997)).

After reviewing the record, we are satisfied the prosecution's remarks were neither impermissible nor improper. Rather, the prosecutor made these statements in response to defense counsel's remarks during summation:

> And if you recall from her testimony, she did not even identify [defendant], wasn't able to say anything about her prior residence, and she said she forgot to a lot of the questions that were asked to her. At no point did she ever go on this stand and say that [defendant] did anything to her.

In context, we understand the prosecutor was attempting to explain Heidi's repeated claims of forgetfulness in response to defense counsel's questioning her reliability. The prosecutor's statement was consistent with requesting the jurors

to exercise their common sense and everyday knowledge of people's behavior, as the court specifically encouraged in its final charge:

> An inference is a deduction of fact that may logically and reasonably be drawn from another group of facts established by the evidence. Whether or not inferences should be drawn is for you to decide using your own common sense, knowledge, and everyday experience. Ask yourself, is it probable, logical, and reasonable?

Similarly, our review of the prosecutor's statement does not persuade us she impermissibly commented on defendant's exercise of his right to remain silent or right to be present at trial. Her passing reference to defendant's presence was made in the context of urging jurors to consider the behavior of a young child coming into a "big room with all these people looking at her." This statement was a response to defense counsel's questioning Heidi's credibility and fairly encompasses a request that the jury make "reasonable inferences . . . drawn from the evidence." R.A.M., 482 N.J. Super. at 452.

Even if we assume for the sake of argument that the prosecutor's comments were improper, they were not "so egregious [as to] deprive[] the defendant of a fair trial." Ibid. The court was not required to provide any curative instruction to the jury, particularly given the absence of objection or request for such an instruction. Nonetheless, we note the court included in its final instruction, "the closing arguments, openings, statements, remarks by

17

counsel, they're not evidence and must not be treated as evidence."

Witness Testimony

Defendant argues Detective Giraldo-Gomez improperly described or narrated the video she received from Kate as depicting "[Heidi] being sexually assaulted." As the video was playing, the phrase "Brazzers is still free," played from defendant's phone. Detective Giraldo-Gomez, "based on [her] training and experience," opined that Brazzers was an adult pornography website. Defendant argues this opinion was improper because Giraldo-Gomez did not specify her "training and experience" qualified her to make that assessment.

We review evidentiary decisions for abuse of discretion. State v. Prall, 231 N.J. 567, 580 (2018). An evidentiary ruling will be overturned only when "a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005) (internal quotation marks omitted) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

N.J.R.E. 701 permits a lay witness's "testimony in the form of opinions or inferences . . . if it is (a) rationally based on the perception of the witness and (b) will assist in understanding the witness testimony or in determining a fact in issue." "[T]he first prong -- the 'perception' prong -- requires that a witness's

18

'testimony . . . be based on the witness's "perception," which 'rests on the acquisition of knowledge through the use of one's sense of touch, taste, sight, smell or hearing.'" Watson, 254 N.J. at 592 (omission in original) (quoting State v. Higgs, 253 N.J. 333, 363 (2023)). "The second prong -- the 'helpfulness' prong – limits lay opinion testimony 'to testimony that will assist the trier of fact either by helping to explain the witness's testimony or by shedding light on the determination of a disputed factual issue.'" Ibid. (quoting Higgs, 253 N.J. at 363).

Such testimony "can only be admitted if it falls within the narrow bounds of testimony that is based on the perception of the witness and that will assist the jury in performing its function." State v. McLean, 205 N.J. 438, 456 (2011). "It is well-established that a lay witness may give his opinion in matters of common knowledge and observation." State v. LaBrutto, 114 N.J. 187, 197 (1989).

Applying these principles, we conclude the trial court did not abuse its direction in permitting Giraldo-Gomez's narration testimony. First, the description of the video as "[Heidi] being sexually assaulted" was not improper narration testimony. Defendant's reliance on Watson is misplaced because the detective here was not seeking to narrate the video but rather referencing the

evidence as Kate characterized it.  Further, any potential prejudice was cured by

the trial court's final jury instruction:

> Now, you were presented with a video during the trial.  It is always within the special function of the jury to determine the facts.  This includes what is or is not depicted on the video and what significance, if any, that has.  In this case, Detective Giraldo[-Gomez] narrated a portion of the video.  Detective Giraldo[-Gomez] was not an eyewitness to the events depicted on the video and did not observe the events as they happened.  Rather, the witness's testimony is based on their viewing of the video after the incident occurred.

> The testimony was permitted only for the limited purpose, providing the context for the video, specifically the location of the recorded events, and explaining the length of the video, whether redactions were made or not, and when or whether it was fast forwarded.  You may not consider Detective Giraldo[-Gomez]'s narration or other comments on the video for any other purpose.

> The narrating witness's testimony may assist you in deciding what the video shows.  However, you are not bound by the narrating witness's testimony, and you may reject any narration testimony.   You should consider each opinion and give it the weight to which it is entitled, whether that be great, slight, or none at all.  Ultimately, it's up to you and you alone to decide for yourself what the video shows and what it does not show.

Moreover, the detective's testimony that "Brazzers" is an adult

pornography website was permissible lay opinion rationally based on her

perception of the video. Because Detective Giraldo-Gomez's testimony assisted "the jury in performing its function," <u>McLean</u>, 205 N.J. at 456, it satisfies both the "perception" and "helpfulness" prongs of N.J.R.E. 701, <u>Watson</u>, 254 N.J. at 592. The trial court did not abuse its discretion in admitting her testimony.

To the extent we have not addressed any of defendant's remaining arguments, they lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-1330-24