SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**State v. Anthony K. Cole (A-66-15) (076255)**

**Argued January 17, 2017 -- Decided June 27, 2017**

**PATTERSON, J., writing for the Court.**

In this appeal, the Court reviews the trial court's denial of defendant's motion to bar the admission into evidence of three segments of video, recorded during breaks from questioning at police headquarters, in which defendant appeared alone in the interrogation room.

On the evening of September 7, 2009, David Donatelli was in Spring Lake Park, preparing for South Plainfield's annual Labor Day fireworks display. As he stood looking up to examine a light stanchion, Donatelli was slashed. The laceration on the side of his neck exposed his carotid artery and jugular vein.

A police officer found two matching black-and-gray gloves. Blood identified by DNA analysis as Donatelli's was found on the outside of the glove. State Police forensic scientists then swabbed the interior of both gloves and detected skin cells that matched defendant's DNA profile in the database. Officers arrested defendant.

Police officers interrogated defendant in two sequential conversations, both video-recorded. Advised that the officers had forensic evidence linking him to the crime, defendant maintained his innocence, provided an alibi, and asked to be released. When the officers were in the room, defendant was gregarious and engaged. When briefly left alone during three breaks from the questioning, however, defendant adopted a starkly different demeanor; he muttered to himself, mouthed obscenities toward the location where the officers had been sitting and the video camera, and placed his hand inside his pants.

Defendant was tried before a jury over six days. On the second day of trial, defense counsel stated that the portions of the video recordings in which defendant appeared alone were unduly prejudicial under N.J.R.E. 403. The trial court ruled that the contested sections were relevant because they reflected on defendant's demeanor and the accuracy of his statements. The court admitted the video recordings in their entirety. It invited defense counsel to submit a proposed jury instruction addressing the limited purpose for which the jury should consider the segments of the recordings in which defendant appeared alone.

During the State's case, the contested video recordings were played for the jury. The trial court reiterated its offer to give the jury a cautionary instruction. The record does not indicate that defense counsel proposed such an instruction. The prosecutor specifically addressed defendant's conduct when he was alone and suggested that defendant's "manipulation" of his presentation to police signaled his guilt. Defendant did not object.

In its jury charge, the trial court instructed the jurors that they were the sole and exclusive judges of the evidence, including the credibility of witnesses, but did not specifically address the portions of the video recordings in which defendant sat alone in the interrogation room. The jury convicted defendant of attempted murder, unlawful possession of a weapon, possession of a weapon for an unlawful purpose, and hindering apprehension. In a separate proceeding, the jury convicted defendant of the remaining offense, certain persons not to have a weapon.

An Appellate Division panel reversed defendant's conviction and remanded for a new trial. The panel deemed the contested segments too equivocal to be admitted as consciousness-of-guilt evidence, particularly without a limiting instruction. The Court granted the State's petition for certification. 224 N.J. 527 (2016).

**HELD**: The trial court properly exercised its broad discretion when it applied N.J.R.E. 401 and 403 to the contested evidence and admitted the video recordings in their entirety. The lack of a limiting instruction and the prosecutor's comment on the evidence did not constitute plain error.

1

1. N.J.R.E. 401 defines "[r]elevant evidence" as "evidence having a tendency in reason to prove or disprove any fact of consequence to the determination of the action." Once a logical relevancy can be found to bridge the evidence offered and a consequential issue in the case, the evidence is admissible, unless exclusion is warranted under a specific evidence rule. N.J.R.E. 403 mandates the exclusion of evidence that is otherwise admissible "if its probative value is substantially outweighed by the risk of . . . undue prejudice, confusion of issues, or misleading the jury." To determine the admissibility of evidence under N.J.R.E. 401 and 403, the trial court conducts a fact-specific evaluation of the evidence in the setting of the individual case. On appellate review, considerable latitude is afforded to the court's ruling, which is reversed only if it constitutes an abuse of discretion. (pp. 17-21)

2. In this case, the conduct depicted in the video recordings was germane to the jury's assessment of defendant's credibility in his statement to police and therefore relevant to its determination of pivotal issues. The portions of the two video recordings in which defendant was alone in the interrogation room met N.J.R.E. 401's standard of relevancy. The segments at issue were potentially prejudicial to defendant; that evidence, however, was not prejudicial to the point at which the risk of prejudice substantially outweighed the probative value of the evidence, as N.J.R.E. 403 requires for the evidence to be excluded. The trial court did not abuse its discretion when it admitted into evidence the video recordings, including the portions in which defendant was alone. (pp. 21-27)

3. The Appellate Division panel reversed defendant's conviction based not on a relevance analysis, but on its conclusion that the video segments were inadmissible as evidence of consciousness of guilt. The three video-recorded segments were not offered or admitted as consciousness-of-guilt evidence but on the ground that they were relevant to the jury's evaluation of the credibility of defendant's statement. Accordingly, the Court does not determine whether the evidence in question was admissible as consciousness-of-guilt evidence. (pp. 27-28)

4. The Appellate Division noted that the trial court did not give a limiting instruction. The trial court twice offered to give a limiting instruction. Defense counsel did not submit a proposed instruction and the trial court did not sua sponte charge the jury regarding the video recordings. Given the brief duration of the video-recorded excerpts in a six-day trial, it is unclear whether a limiting instruction would have clarified the limited purpose of the videotaped segments or overemphasized the evidence. Moreover, the State presented overwhelming evidence of defendant's guilt, including DNA evidence linking defendant to a glove on which the victim's blood was found shortly after the crime, as well as testimony by defendant's mother and friends that substantially undermined his account of his activities during the critical time period. The trial court's decision not to charge the jury on this issue was not "clearly capable of producing an unjust result," and was not plain error. R. 2:10-2. (pp. 28-31)

5. The prosecutor's reference to defendant's demeanor as proof of his guilt was beyond the scope of fair comment. The prosecutor was free to discuss the video-recorded segments in which defendant was alone but should have constrained any such discussion to the question of credibility. The Court cautions prosecutors that when evidence is admitted for a limited purpose, comments in summation that exceed the bounds of that purpose must be avoided. However, the comment was not clearly capable of producing an unjust result, giving rise to plain error. (pp. 31-34)

6. The Court addresses the issues raised in the concurrence, and stresses that its ruling is distinctly fact-sensitive and based on the standard of review. (pp. 34-38)

The judgment of the Appellate Division is **REVERSED**, and the matter is **REMANDED** to the Appellate Division for proceedings consistent with this opinion.

**CHIEF JUSTICE RABNER, CONCURRING,** is of the view that multiple reasonable inferences can be drawn from defendant's behavior after the interview and that no authority directly supports the use of evidence of a witness's demeanor after an interrogation has ended. According to Chief Justice Rabner, the video's minimal relevance was substantially outweighed by the risk of undue prejudice and the danger that the recording would mislead the jury, and the evidence should have been excluded under N.J.R.E. 403. Chief Justice Rabner concurs in the judgment because he finds the error was harmless in light of other strong evidence of defendant's guilt.

**JUSTICES LaVECCHIA, FERNANDEZ-VINA, and SOLOMON join in JUSTICE PATTERSON's opinion. CHIEF JUSTICE RABNER filed a separate, concurring opinion, in which JUSTICES ALBIN and TIMPONE join.**

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

      v.

ANTHONY K. COLE,

    Defendant-Respondent.


        Argued January 17, 2017 – Decided June 27, 2017

        On certification to the Superior Court,
        Appellate Division.

        Joie D. Piderit, Assistant Prosecutor,
        argued the cause for appellant (Andrew C.
        Carey, Middlesex County Prosecutor,
        attorney).

        Susan Brody, Deputy Public Defender, argued
        the cause for respondent (Joseph E. Krakora,
        Public Defender, attorney).

        Jennifer E. Kmieciak, Deputy Attorney
        General, argued the cause for amicus curiae
        Attorney General of New Jersey (Christopher
        S. Porrino, Attorney General, attorney).

    JUSTICE PATTERSON delivered the opinion of the Court.

    In this appeal, we review an evidentiary ruling made by the trial court during defendant's trial for attempted murder and other offenses.

    Several months after a municipal employee was assaulted and seriously injured during a public event, defendant Anthony K. Cole was linked by DNA analysis to evidence found at the scene.

Police officers arrested defendant, transported him to police headquarters, and interrogated him in two sequential conversations, both video-recorded. Advised that the officers had forensic evidence linking him to the crime, defendant maintained his innocence, provided an alibi, and asked to be released. When the officers were in the room, defendant was gregarious and engaged. When briefly left alone during three breaks from the questioning, however, defendant adopted a starkly different demeanor; he muttered to himself, mouthed obscenities toward the location where the officers had been sitting and the video camera, and placed his hand inside his pants.

The trial court denied defendant's motion to bar the admission into evidence of the three segments of the video recordings in which defendant appeared alone in the interrogation room. The court ruled that the contested portions of the video recordings were relevant to the credibility of defendant's statement denying involvement in the crime and that they met the standard of N.J.R.E. 401. The court rejected defendant's argument that the evidence was unduly prejudicial and should be excluded under N.J.R.E. 403.

At trial, the State presented the video recordings in their entirety, along with substantial evidence of defendant's guilt, including DNA analysis and the testimony of witnesses who

2

contradicted defendant's statement. The trial court offered to give the jury a limiting instruction about the video-recorded evidence upon defendant's request; defendant did not seek such an instruction. In summation, the prosecutor not only urged the jury to consider the video recording in assessing defendant's credibility, but also suggested that defendant's behavior when the officers were out of the interrogation room signified his guilt. The jury convicted defendant of all charges.

An Appellate Division panel reversed defendant's conviction. The panel did not determine whether the trial court had properly admitted the video-recorded segments at issue as relevant to the credibility of defendant's statement to police. It held, however, that those segments were inadmissible as consciousness-of-guilt evidence.

We do not concur with the Appellate Division's analysis of this case. The trial court admitted the disputed video-recorded segments not because they constituted proof of defendant's consciousness of guilt, but by virtue of their relevance to defendant's credibility when he denied involvement in the crime immediately before and after those segments were recorded. We conclude that the trial court properly exercised its broad discretion when it applied N.J.R.E. 401 and 403 to the contested evidence and admitted the video recordings in their entirety. We further hold that the lack of a limiting instruction and the

3

prosecutor's comment on the evidence did not constitute plain error.

Accordingly, we reverse the Appellate Division's judgment and remand this matter to the panel for a determination of the issues raised by defendant on appeal that remain unresolved.

I.

We derive our account of the facts from the trial record.

On the evening of September 7, 2009, David Donatelli, a supervisor employed by the Borough of South Plainfield Department of Public Works, was on duty in Spring Lake Park, preparing for the Borough's annual Labor Day fireworks display. As he stood in the northeast portion of the park near its tennis courts and an adjacent walking path, looking up to examine a light stanchion, Donatelli sensed someone brushing up against his shoulder. He felt as if his neck were struck by "a whip," began to bleed, and realized that he had been slashed with a sharp object. Donatelli implored his fellow employees to help him, laid down on the ground, and went into shock.

After a police officer rendered first aid, an ambulance transported Donatelli to a trauma center. Physicians conducted emergency surgery to close a laceration on the side of Donatelli's neck; the laceration measured six to eight inches in length and was deep enough to expose, but not to sever, his carotid artery and jugular vein. Donatelli was left with a

4

permanent scar and loss of sensation in the affected area.  He never returned to his job.

Two witnesses who had been in the park to attend the fireworks display generally described a man whom they had seen running near the path in the vicinity of the assault.  Police officers searched the area but did not locate a suspect.  A K-9 dog led its handler along a scent trail near the path but stopped abruptly on a nearby street, signaling that an individual may have exited the park and departed in a vehicle.

The following morning, during a search of the path near the location where Donatelli had been attacked, a police officer found two matching black-and-gray gloves, one on the ground and the other suspended from a tree thirteen feet above the ground. The gloves were secured and delivered to the New Jersey State Police forensic laboratory for DNA testing.

For several weeks, the investigation stalled as officers interviewed various individuals but ruled them out as suspects. Five weeks after the assault, however, the State Police laboratory advised South Plainfield officers that blood identified by DNA analysis as Donatelli's had been found on the outside of the glove, on the index finger portion of the glove. State Police forensic scientists then swabbed the interior of both gloves and detected skin cells.  They submitted samples of those cells for comparison with the statewide database of known

5

DNA profiles. That comparison revealed a match between DNA extracted from the skin cells found in the gloves and defendant's DNA profile in the database.

On December 16, 2009, the State Police forensic laboratory advised the South Plainfield Police Department that DNA evidence connected defendant to the gloves. Several of the Borough's officers were acquainted with defendant through encounters with him at the Police Athletic League (PAL) facility, where defendant regularly lifted weights. An officer contacted defendant by cellphone to determine his location. Several officers arrested defendant and brought him to police headquarters.

Defendant stated that he wanted to talk to police officers and was immediately escorted to an interrogation room, where video-recording equipment documented the proceedings.

After waiving his rights under Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), defendant was interviewed by two officers for approximately two hours. Defendant was talkative and responsive during the conversation; he addressed the officers in a familiar and friendly tone, invoking his prior contacts with them while lifting weights at the PAL facility. He admitted that he was in Spring Lake Park the night of the incident but denied that he was in the section of the park where the attack on Donatelli occurred. Defendant

6

told the officers that he was alone in the park that evening and that he did not encounter anyone he knew. He stated that as the fireworks were beginning, his mother called him and said that she needed him to come home "to cut some boxes or something stupid and take them out for recycling," and that he "just left." Defendant gave the officers an incorrect cellphone number for his mother.

Shown a photograph of gloves similar to the gloves found in Spring Lake Park the morning after Donatelli was attacked, defendant denied ever owning or wearing gloves of that type. He offered to prove that contention by retrieving his own pair of gloves from his home and bringing them to the officers. At the officers' request, defendant provided a DNA sample by buccal swab.

As the interview progressed, the officers revealed to defendant that "scientific" evidence connected him, as well as the victim, to the gloves found in the park. Late in the interview, an officer showed defendant an excerpt of the DNA testing results provided by the State Police laboratory. Defendant challenged the DNA evidence, reiterated his innocence, and insisted that he should be permitted to leave the police station. The officers declined to release defendant, offered to resume the conversation at defendant's request, and left the room.

7

The video recording then displayed an abrupt change in defendant's demeanor. After a few seconds of silence, defendant began to mutter to himself in an agitated manner. He put his hand inside his pants and mouthed obscenities in the direction of the seats where the officers had been sitting, and in the direction of the camera. Approximately five minutes later, defendant stood up and summoned an officer by knocking on the door. When an officer responded, defendant addressed him in a collegial manner. Defendant was escorted from the room. At that point, the first of the two video recordings ended.

Minutes later, defendant spotted South Plainfield's Chief of Police, with whom he was acquainted, and asked to speak with him. Defendant, the Chief of Police, and another officer entered the interrogation room and the video-recorded interrogation resumed.[1] After waiving his Miranda rights for the second time, defendant again denied involvement in the attack on Donatelli and requested that the Chief of Police release him from custody. The Chief told defendant that according to the DNA evidence, defendant had worn the gloves found at the scene. He offered to leave the room to give defendant an opportunity to decide whether to explain the presence of his DNA in the gloves.

---

[1] The second video recording admitted at trial began recording approximately seventeen minutes after the completion of the first video recording.

Left alone in the interrogation room for less than two minutes, defendant became agitated and muttered to himself.

When the Chief of Police returned, defendant resumed his cooperative demeanor. He bantered with the Chief about weightlifting and referred to one of the other officers as a "cool guy." Defendant offered to state his case to a judge, provided that the Chief release him from custody. The Chief asked defendant to explain what had happened at Spring Lake Park on the evening of the crime. Defendant insisted that he was alone that evening and that he was not by the tennis courts. He again requested to be released and promised to explain his innocence to "the judge."

The Chief of Police again left the room. For about three minutes, the camera recorded defendant as he reviewed a document regarding the DNA test results and mouthed words. The Chief of Police then returned and offered to call one of defendant's relatives regarding defendant's status. Defendant insisted that if the Chief of Police called someone on his behalf, that person should be permitted to drive him home. Defendant told the Chief of Police that he had "nothing to do" with Donatelli and "[did not] even care about him." The Chief departed, and the second video recording concluded.

Police officers later conducted consent searches of the rooms that defendant occupied in his parents' homes but found no

9

evidence.  Pursuant to a communications data warrant, officers obtained records of cellphone calls to and from defendant and his mother for September 7, 2009; those records revealed no telephone conversation between defendant and his mother on that date.  Defendant's cellphone records indicated that at 8:47 p.m. that evening, shortly after Donatelli was assaulted, defendant used his cellphone to call a local taxi service.

The State Police forensic laboratory advised the investigating officers that the DNA sample taken by buccal swab during defendant's interrogation confirmed that defendant was the source of the skin cells extracted from the gloves found in Spring Lake Park the morning after Donatelli was assaulted.  According to the State's forensic expert, defendant's DNA sample and the cells found in the left glove shared a DNA profile found in "one in a quadrillion" individuals.[2]

II.

Defendant was indicted for first-degree attempted murder, N.J.S.A. 2C:11-3(a)(1) and 2C:5-1; fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d); third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-

---

[2]  The comparison of defendant's confirmed DNA sample with DNA derived from skin cells found in the right glove also revealed a match, but that match was substantially less definitive than the match revealed by the left glove, because the skin cells in the right glove generated only a partial DNA profile.

4(d); third-degree hindering apprehension, N.J.S.A. 2C:29-3(b); and fourth-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(a).

Defendant was tried before a jury over six days. On the second day of trial, the trial court heard argument regarding the admissibility of the two video recordings of defendant's conversations with the South Plainfield officers.[3] Defense counsel stated that the portions of the video recordings in which defendant appeared alone were "weird" and "unsettling" and objected to their admission as unduly prejudicial under N.J.R.E. 403. The State noted that when the officers left the interrogation room, defendant abandoned his "guy next door . . . persona" and put "his hand down his pants, MF'n the [o]fficers." The State argued that the contested video-recorded segments were relevant and should be admitted so that the jury would have complete information to evaluate defendant's statement.

After reviewing the video recordings, the trial court ruled that the contested sections were relevant because they included "nonverbal . . . acts and facial expression[s,] . . . some directly to the camera" that reflected on defendant's demeanor and the accuracy of his statements. The court admitted the

---

[3] For reasons the record does not reveal, and with no objection by defendant, the State redacted portions of the video recordings. Those redactions are not at issue in this appeal.

11

video recordings in their entirety. It invited defense counsel to submit a proposed jury instruction addressing the limited purpose for which the jury should consider the segments of the recordings in which defendant appeared alone.

During the State's case at trial, the investigating officers testified about the discovery of the gloves the day after the assault of Donatelli and described the events that led to defendant's arrest. The two contested video recordings were played for the jury during direct examination of the lead investigator. The trial court reiterated its offer to give the jury a cautionary instruction about the portions of the video recording in which defendant was alone in the interrogation room. The record does not indicate that defense counsel proposed such an instruction.

The State also presented the testimony of forensic experts to explain the DNA evidence that linked defendant and the victim to the gloves. The witnesses who had seen a man running in the vicinity of the crime testified about what they observed. A late-disclosed witness, who described himself as a "good acquaintance[]" of defendant, told the jury that he saw defendant at the Labor Day fireworks that evening and that, although defendant asked him for a ride home and told him that he would see him later, he never saw defendant again.

12

The State also presented evidence to undermine defendant's contention that he left the fireworks event early to assist his mother by cutting boxes for recycling. Defendant's mother testified that she was unsure whether she spoke with her son on September 7, 2009, but was certain that she did not ask him to help with her recycling; she noted that residents in her area are not required to cut boxes to prepare them for recycling. The State also presented the cellphone records indicating that defendant and his mother did not speak by cellphone that evening. Donatelli described the assault, and medical professionals who treated him testified about the nature and extent of his injuries.

Defendant declined to testify and presented no witnesses.

Relying in part on defendant's video-recorded statements to the officers, defense counsel argued in summation that defendant was innocent and that the investigating officers ignored leads that could have implicated another individual in the crime. The prosecutor specifically addressed defendant's video-recorded conduct when he was alone in the interrogation room; he initially focused on that conduct's impact on the credibility of defendant's statement. He then suggested, however, that defendant's "manipulation" of his presentation to police signaled his guilt. Defendant did not object to the State's summation.

13

In its jury charge, the trial court instructed the jurors that they were the sole and exclusive judges of the evidence, including the credibility of witnesses, but did not specifically address the portions of the video recordings in which defendant sat alone in the interrogation room.  During deliberations, the jury requested a playback of two excerpts of the video recordings:  the last five minutes of the first video recording, in which defendant was alone in the interrogation room, and the portion of the second video recording in which defendant "state[d] he doesn't care about the [victim.]"

The jury convicted defendant of attempted murder, unlawful possession of a weapon, possession of a weapon for an unlawful purpose, and hindering apprehension.  In a separate proceeding, the jury convicted defendant of the remaining offense, certain persons not to have a weapon.  The trial court sentenced defendant to an aggregate term of incarceration of twenty-six and a half years, subject to eighty-five percent parole ineligibility in accordance with the No Early Release Act, N.J.S.A. 2C:43-7.2(a).

Defendant appealed his conviction and sentence.  An Appellate Division panel reversed defendant's conviction and remanded for a new trial.  The panel did not determine whether the trial court had properly found that the contested segments of the video were relevant to the jury's assessment of

14

defendant's credibility. Instead, the panel characterized those segments as consciousness-of-guilt evidence, admissible only if the conduct is intrinsically indicative of the defendant's guilty conscience. Citing the possibility that defendant's behavior reflected an innocent man's anger at a false allegation, the panel deemed the contested segments too equivocal to be admitted as consciousness-of-guilt evidence, particularly without a limiting instruction. The panel declined to determine whether N.J.R.E. 403 would bar the evidence. The panel stated that additional arguments raised by defendant were either without merit or were obviated by the panel's holding, but did not specify which of the remaining issues had been decided.

We granted the State's petition for certification. 224 N.J. 527 (2016). We also granted the Attorney General's motion to appear as amicus curiae.

### III.

The State argues that all of the video recordings of defendant in the interrogation room were properly admitted as relevant to his credibility. The State asserts that the Appellate Division panel improperly focused its inquiry on the standard for consciousness-of-guilt evidence, and applied that standard too strictly. It notes that Rule 3:17(a) mandates the videotaping of interrogations of some defendants if they are

15

conducted in a place of detention and asserts that the admission of evidence video-recorded in conformance with that Rule enhances a jury's ability to assess the defendant's credibility. Finally, the State contends that in light of DNA evidence and other proofs against defendant, any evidentiary error was harmless.

Defendant counters that, by definition, a police interrogation excludes any setting in which there are no officers in the room. He characterizes the disputed video segments as post-interrogation and distinguishes this case from cases in which a video recording depicts a defendant briefly alone in an interrogation room between questioning sessions. Defendant contends that the Appellate Division panel properly evaluated the evidence within the framework of consciousness of guilt and that, even if the video recordings were admissible in their entirety, the trial court should have issued a limiting instruction. Defendant contends that the alleged error was not harmless because the DNA found in the gloves was insufficient to definitively identify defendant.

The Attorney General asserts that the Appellate Division panel improperly substituted its judgment for that of the trial court. It contends that a jury should consider all evidence that is relevant to a defendant's credibility, and that the

16

State conformed with court rules when it presented a complete video recording of the events in the interrogation room.

IV.

A.

In its ruling that the contested evidence was admissible, the trial court applied two fundamental rules of evidence: N.J.R.E 401, which prescribes the standard of relevancy, and N.J.R.E. 403, which directs a court to bar the admission of relevant evidence when the probative value of that evidence is substantially outweighed by the risk of undue prejudice.

N.J.R.E. 401 defines "[r]elevant evidence" as "evidence having a tendency in reason to prove or disprove any fact of consequence to the determination of the action." N.J.R.E 401; see also State v. Perry, 225 N.J. 222, 236-37 (2016) (discussing N.J.R.E. 401 analysis when considering Rape Shield Law); State v. Jenewicz, 193 N.J. 440, 457-58 (2008) (considering N.J.R.E. 401 in determining whether testimony as to identity of initial aggressor in previous fight was relevant to identity of initial aggressor in fight at issue in case). When a court decides whether evidence is relevant, "the inquiry should focus on the logical connection between the proffered evidence and a fact in issue." State v. Bakka, 176 N.J. 533, 545 (2003) (internal quotation marks omitted) (quoting State v. Darby, 174 N.J. 509, 519 (2002)).

17

"Courts consider evidence to be probative when it has a tendency 'to establish the proposition that it is offered to prove.'" State v. Burr, 195 N.J. 119, 127 (2008) (quoting State v. Allison, 208 N.J. Super. 9, 17 (App. Div.), certif. denied, 102 N.J. 370 (1985)). The evidence must be probative of a fact that is "really in issue in the case," as determined by reference to the applicable substantive law. State v. Buckley, 216 N.J. 249, 261 (2013) (quoting State v. Hutchins, 241 N.J. Super. 353, 359 (App. Div. 1990)).

Under N.J.R.E. 401, "[e]vidence need not be dispositive or even strongly probative in order to clear the relevancy bar." Id. at 261. The proponent need not demonstrate that the evidence can, in and of itself, establish or disprove a fact of consequence in order to meet the benchmark of N.J.R.E. 401. "Once a logical relevancy can be found to bridge the evidence offered and a consequential issue in the case, the evidence is admissible, unless exclusion is warranted under a specific evidence rule." Burr, supra, 195 N.J. at 127.

One such rule excluding relevant evidence is N.J.R.E. 403. That rule mandates the exclusion of evidence that is otherwise admissible "if its probative value is substantially outweighed by the risk of (a) undue prejudice, confusion of issues, or misleading the jury or (b) undue delay, waste of time, or needless presentation of cumulative evidence." N.J.R.E 403.

18

Here, defendant relies on the "undue prejudice" factor of N.J.R.E. 403. As this Court has noted, the inquiry under that provision of N.J.R.E. 403 is whether the probative value of the evidence "is so significantly outweighed by [its] inherently inflammatory potential as to have a probable capacity to divert the minds of the jurors from a reasonable and fair evaluation of the" issues. State v. Thompson, 59 N.J. 396, 421 (1971). It is not enough for the opposing party to show that the evidence could be prejudicial; "[d]amaging evidence usually is very prejudicial but the question here is whether the risk of undue prejudice was too high." State v. Morton, 155 N.J. 383, 453-54 (1998) (quoting State v. Bowens, 219 N.J. Super. 290, 297 (App. Div. 1987)); see also State v. Swint, 328 N.J. Super. 236, 253 (App. Div.) ("The mere possibility that evidence could be prejudicial does not justify its exclusion."), certif. denied, 165 N.J. 492 (2000).

To determine the admissibility of evidence under N.J.R.E. 401 and 403, the trial court conducts a fact-specific evaluation of the evidence in the setting of the individual case. See, e.g., State v. Cotto, 182 N.J. 316, 333 (2005) (stating that ruling on admissibility of evidence of third-party guilt "requires a fact-sensitive inquiry"); State v. Koedatich, 112 N.J. 225, 300 (1988) (noting "particularly fact-sensitive" nature of relevancy determination when defendant asserts third-

19

party guilt), cert. denied, 488 U.S. 1017, 109 S. Ct. 813, 102 L. Ed. 2d 803 (1989).

In light of the broad discretion afforded to trial judges, an appellate court evaluates a trial court's evidentiary determinations with substantial deference. State v. Kuropchak, 221 N.J. 368, 385 (2015). On appellate review, "[c]onsiderable latitude is afforded" to the court's ruling, which is reversed "only if it constitutes an abuse of discretion." Ibid. (alteration in original) (quoting State v. Feaster, 156 N.J. 1, 82 (1998), cert. denied, 532 U.S. 932, 121 S. Ct. 1380, 149 L. Ed. 2d 306 (2001)); see also State v. Gorthy, 226 N.J. 516, 539 (2016) (citing State v. T.J.M., 220 N.J. 220, 233-34 (2015); State v. Buda, 195 N.J. 278, 294 (2008)). When a trial court weighs the probative value of evidence against its prejudicial effect pursuant to N.J.R.E. 403, its ruling should be overturned only if it constitutes "a clear error of judgment." Koedatich, supra, 112 N.J. at 313. As this Court observed, applying the predecessor rule to N.J.R.E. 403, a trial court's weighing of probative value against prejudicial effect "must stand unless it can be shown that the trial court palpably abused its discretion, that is, that its finding was so wide of the mark that a manifest denial of justice resulted." State v. Carter, 91 N.J. 86, 106 (1982).

B.

20

In accordance with the deferential standard of review, we apply N.J.R.E. 401 and 403 to the evidence that the trial court admitted in defendant's trial.

1.

We first consider whether the trial court abused its discretion when it found that the contested evidence had "a tendency in reason to prove or disprove any fact of consequence," and that it accordingly met the relevancy standard of N.J.R.E. 401.

In his video-recorded statement, defendant addressed several factual issues that would be disputed before the jury at his trial. Defendant identified the time frame of his visit to Spring Lake Park during the evening of September 7, 2009. He described his location and activities in the park. Defendant denied that he encountered anyone he knew at the fireworks event, thus contradicting one of the State's key witnesses. He asserted an alibi, premised on a call from his mother summoning him home to assist her. Defendant denied any connection to the gloves found at the scene. Most critically, defendant repeatedly and unequivocally denied any involvement in the attack on Donatelli. Defendant's video-recorded statement thus challenged the State's theory in significant respects. Not surprisingly, both counsel discussed that statement in their summations.

As the trial court properly instructed the jury, it was the jury's province to assess the credibility of all of the evidence. "[C]redibility is an issue which is peculiarly within the jury's ken." State v. Frisby, 174 N.J. 583, 595 (2002) (quoting State v. J.Q., 252 N.J. Super. 11, 39 (App. Div. 1991), aff'd, 130 N.J. 554 (1993)); see also Kansas v. Ventris, 556 U.S. 586, 594 n., 129 S. Ct. 1841, 1847 n., 173 L. Ed. 2d 801, 809 n. (2009) ("Our legal system . . . is built on the premise that it is the province of the jury to weigh the credibility of competing witnesses . . . ."). Here, that evidence included defendant's self-exculpatory statement. Our Model Jury Charges admonish jurors, in considering whether or not a defendant's statement is credible, to "take into consideration the circumstances and facts as to how the statement was made, as well as all other evidence in this case relating to this issue." Model Jury Charges (Criminal), "Statements of Defendant" (June 14, 2010).

In that inquiry, a video recording is a valuable tool. As this Court observed in State v. Cook, videotaping a statement "enhance[s] a judge or juror's assessment of credibility by providing a more complete picture of what occurred." 179 N.J. 533, 556 (2004) (quoting Heath S. Berger, Let's Go to the Videotape: A Proposal to Legislate Videotaping of Confessions,

3 Alb. L.J. Sci. & Tech. 165, 173-74 (1993)).[4]  Viewing the video recording, the jury could assess defendant's facial expressions and gestures as well as his words and determine whether his assertions of innocence were strategic or sincere.

Defendant's behavior during the brief intervals in which he was alone in the interrogation room was closely intertwined with his assertions of innocence.  Each of the three disputed segments immediately followed a conversation in which defendant stressed his camaraderie with the officers as he disclaimed involvement in the crime; each was followed by a similar exchange between defendant and the officers.  In the complete video recordings, the jury was able to view defendant's abrupt changes in behavior -- attentive and communicative in the officers' presence, muttering and silently cursing in their

---

[4]  The Court's opinion in Cook led to Rule 3:17, which addresses the video recording of statements made by defendants.  In Cook, supra, the Court rejected the defendant's due process challenge based on the admission of his confession without a video recording of that confession.  179 N.J. at 559-60.  The Court stated, however, that it intended to "evaluate fully the protections that electronic recordation affords to both the State and to criminal defendants."  Id. at 562.  The Court referred the issue to a committee and later adopted Rule 3:17.  With specific exceptions, that Rule requires the videotaping of a defendant's statement taken in a place of detention, if the defendant is charged with one of the offenses enumerated in the Rule.  Rule 3:17(a).  Thus, the video recordings at issue in this case were prepared in conformance with a court rule intended, among other objectives, to assist the jury in its evaluation of a defendant's credibility.  See R. 3:17(d); Cook, supra, 179 N.J. at 556.

23

direction after they departed, then resuming his congenial demeanor when they returned. When the jury viewed defendant's account of the critical evening, the disputed video-recorded segments provided important context for the factual assertions that preceded them and for those that followed.

As the Appellate Division panel observed, the conduct reflected in the disputed segments of the video recordings is subject to more than one interpretation. The jury could infer from the video recordings that when arrested and confronted with forensic evidence months after the crime, defendant contrived an affable demeanor and exculpatory account of the critical events as a strategy to avoid prosecution. Alternatively, the jury could infer that defendant was innocent and that he acted as he did because he was shocked by his arrest and frustrated by the officers' skeptical responses to his truthful denials. The jury could, of course, draw some alternative inference or none at all. In this case, however, the conduct depicted in the video recordings was germane to the jury's assessment of defendant's credibility in his statement to police and therefore relevant to its determination of pivotal issues in the case.

Accordingly, we concur with the trial court that the portions of the two video recordings in which defendant was alone in the interrogation room met N.J.R.E. 401's standard of relevancy.

2.

The trial court also found that the probative value of the evidence was not substantially outweighed by the risk of undue prejudice. N.J.R.E. 403. The court acknowledged that the excerpts from the video recordings could have a negative impact on defendant, but noted that the admission of any defendant's confession is also prejudicial. It did not find the specter of prejudice to substantially outweigh the probative value of the evidence.

We agree with the trial court that N.J.R.E. 403 does not bar the admission of the video-recorded segments. As noted, the evidence was pertinent to the jury's credibility determination and, consequently, was probative as to an array of factual issues addressed by defendant in his video-recorded statement. To be sure, the segments at issue were potentially prejudicial to defendant; the jury learned that defendant's demeanor in the interview strikingly contrasted with his behavior when he was alone. That evidence, however, was not prejudicial to the point at which the risk of prejudice substantially outweighed the probative value of the evidence, as N.J.R.E. 403 requires in order for the evidence to be excluded. See Morton, supra, 155 N.J. at 453-54 ("The mere possibility that evidence could be prejudicial does not justify its exclusion." (citing Bowens, supra, 219 N.J. Super. at 296-97)). Instead of "divert[ing] the

25

minds of the jurors" from their responsibility to fairly decide the case, Thompson, supra, 59 N.J. at 421, the video-recorded segments assisted the jury in conducting the credibility assessment at the core of its charge. Thus, we do not find the trial court's application of N.J.R.E. 403 to represent a "clear error of judgment," Koedatich, supra, 112 N.J. at 313, or to be "so wide of the mark that a manifest denial of justice resulted," Carter, supra, 91 N.J. at 106.[5]

In short, we conclude that the trial court did not abuse its discretion when it admitted into evidence the video recordings of defendant in the South Plainfield Police Department's interrogation room, including the portions of those video recordings in which defendant was alone in the room, on the ground that the evidence was relevant to the credibility of

---

[5] There is no evidence in this case that the police officers who interrogated defendant or the prosecutors who represented the State deliberately protracted the videotaping in the hope that defendant would behave in an aberrant manner when left alone. To the contrary, it appears that the officers video-recorded the interrogation using routine procedures. Nor is there any evidence that defendant was led to believe that the video camera was turned off when the police officers left the room; indeed, defendant appeared at certain points in the video to be looking directly at the camera. Accordingly, we need not consider whether a video recording showing a defendant temporarily alone in an interrogation room would be admissible if there were evidence of misleading or otherwise improper conduct on the part of the State.

defendant's statement, and its probative value was not substantially outweighed by the risk of undue prejudice.

C.

The Appellate Division panel reversed defendant's conviction based not on a relevance analysis, but on its conclusion that the video segments were inadmissible as evidence of consciousness of guilt. Our jurisprudence regarding consciousness-of-guilt evidence derives from the principle that certain conduct may be "intrinsically indicative of a consciousness of guilt," and may therefore be admitted as substantive proof of the defendant's guilt. State v. Phillips, 166 N.J. Super. 153, 160 (App. Div. 1979), certif. denied, 85 N.J. 93 (1980). Such conduct may include "unexplained flight, or an unusual exhibition of remorse for the victim of the crime, or the switching of clothes [with] a cellmate before a lineup." Ibid.; see also State v. Ingram, 196 N.J. 23, 46-50 (2008) (holding that trial court abused discretion in allowing State to argue that defendant's absence from trial constituted consciousness-of-guilt evidence); State v. Mann, 132 N.J. 410, 421-24 (1993) (considering evidence of defendant's attempted suicide as consciousness-of-guilt evidence); State v. Mills, 51 N.J. 277, 286 (holding that evidence that defendant, in distraught state, visited victim's grave was admissible

27

consciousness-of-guilt evidence), cert. denied, 393 U.S. 832, 89 S. Ct. 105, 21 L. Ed. 2d 104 (1968).

As this Court has noted, "[t]he potential for prejudice to the defendant and the marginal probative value of evidence of flight or escape mandate careful consideration of the nature of the evidence to be admitted and the manner in which it is presented." Mann, supra, 132 N.J. at 420 (citing United States v. Hankins, 931 F.2d 1256, 1261-62 (8th Cir.), cert. denied, 502 U.S. 886, 112 S. Ct. 243, 116 L. Ed. 2d 198 (1991)). In such cases, the Court has mandated "a strong limiting instruction . . . informing the jury that it should not draw any inference of consciousness of guilt by defendant from his post-crime conduct unless it believes that defendant acted to cover up a crime." State v. Williams, 190 N.J. 114, 134 (2007).

That jurisprudence does not govern this case. Here, the three video-recorded segments were not offered or admitted as consciousness-of-guilt evidence but on the ground that they were relevant to the jury's evaluation of the credibility of defendant's statement. Accordingly, we do not determine whether the evidence in question was admissible as consciousness-of-guilt evidence.

D.

The Appellate Division panel noted that the trial court did not give a limiting instruction regarding the contested

28

evidence.  Defendant argues before this Court that the trial court's failure to give such an instruction constituted error. Because defendant did not request an instruction, the trial court's determination is reviewed under a plain error standard. See State v. Montalvo, ___ N.J. ___, ___ (2017) (slip op. at 23) ("Without an objection at the time a jury instruction is given . . . this Court reviews the instruction for plain error." (citations omitted)); see also State v. Townsend, 186 N.J. 473, 498 (2006) (reviewing trial court's lack of limiting instruction on proper use of expert testimony under plain error standard set forth in Rule 2:10-2 because defendant did not object at trial and raised issue for first time on appeal); State v. Krivacska, 341 N.J. Super. 1, 42-43 (App. Div.) (finding that trial court's failure to provide limiting instruction was not plain error because defendant failed to request one), certif. denied, 170 N.J. 206 (2001), cert. denied, 535 U.S. 1012, 122 S. Ct. 1594, 152 L. Ed. 2d 510 (2002).

When a party challenges relevant evidence pursuant to N.J.R.E. 403, "[a]s an alternative to total exclusion of highly prejudicial but also probative evidence, trial courts may use the device of a limiting instruction under N.J.R.E. 105." Biunno, Current N.J. Rules of Evidence, comment 5 on N.J.R.E. 403 (2016); see also Ocasio v. Amtrak, 299 N.J. Super. 139, 159-60 (App. Div. 1997) (holding that total exclusion of evidence is

error where prejudice can be minimized through limiting instructions or other means). In some cases, a limiting instruction may provide important guidance as the jury evaluates a video recording and should constrain counsel from addressing extraneous issues in summation. In other cases, such an instruction could focus the jury's attention on a fleeting segment of video recording it might otherwise have ignored. We urge judges to consider giving such an instruction in appropriate circumstances, should they be confronted with an issue similar to that presented by this case.

Here, the trial court twice offered to give a limiting instruction, in a form to be submitted by defendant, to ensure that the jury would not misconstrue the evidence. Defense counsel did not submit a proposed instruction and the trial court did not sua sponte charge the jury regarding the video recordings. Given the brief duration of the video-recorded excerpts in a six-day trial, it is unclear whether a limiting instruction would have clarified the limited purpose of the videotaped segments or overemphasized the evidence. Moreover, the State presented overwhelming evidence of defendant's guilt, including DNA evidence linking defendant to a glove on which the victim's blood was found shortly after the crime, as well as testimony by defendant's mother and friends that substantially

30

undermined his account of his activities during the critical time period.

We therefore hold that the trial court's decision not to charge the jury sua sponte on this issue was not "clearly capable of producing an unjust result," and was not plain error. R. 2:10-2; see also State v. Mohammed, 226 N.J. 71, 89 (2016) (holding that trial court's determination that portion of trial was inconsequential will be reviewed under Rule 2:10-2); State v. Weston, 222 N.J. 277, 300 (2015) (noting that plain error was proper standard of review); State v. Macon, 57 N.J. 325, 337-41 (1971) (defining bounds of plain error standard).

E.

Finally, we comment on a brief portion of the prosecutor's summation to the jury in which the prosecutor addressed the video recordings.

With no objection from defendant, the prosecutor argued to the jury:

> All the statements that [defendant] made [during the interview] are to be analyzed and considered in the context of the level of anger and disturbance that existed when the police leave the room. You observed it, members of the [j]ury. He's the pillar of the community, the Mayor of the metropolis throughout the whole interview.
>
> And on that board as soon as the [p]olice [o]fficers leave, he knows they got him and that's when his hand goes down his pants and he's mouthing "M F'er" to the world because he knew

they got him. And you saw the switch and that's how you're to analyze the credibility of the statements made by the defendant on [that day]. Utilize those portions of his statement when law enforcement was not in the room.

Able to turn it on and off at his leisure, and unless guilty, there is no need to manipulate your presentation, your appearance to law enforcement. Manipulation is the process by which a guilty party attempts to get over.

Thus, after commenting on the credibility question for which the contested portions of the video recordings were offered and admitted into evidence, the prosecutor ventured beyond that limited purpose. The prosecutor suggested to the jury that the distinction between defendant's demeanor when police officers were in the room, and his demeanor when he was alone, indicated that defendant was a "guilty party" seeking to mislead the officers.

This Court has long recognized that "[p]rosecutors are afforded considerable leeway in closing arguments as long as their comments are reasonably related to the scope of the evidence." State v. Frost, 158 N.J. 76, 82 (1999) (citing State v. Harris, 141 N.J. 525, 559 (1995); State v. Williams, 113 N.J. 393, 447 (1988)); accord State v. Timmendequas, 161 N.J. 515, 587 (1999), cert. denied, 534 U.S. 858, 122 S. Ct. 136, 151 L. Ed. 2d 89 (2001). Notwithstanding that latitude, prosecutors should be mindful of the purpose for which evidence is admitted when they comment on that evidence in summation. See, e.g.,

32

United States v. Gross, 511 F.2d 910, 919 (3d Cir.) (finding that prosecutor's suggestion, in summation, that evidence admitted only on issue of credibility was probative of guilt was "troublesome," but did not give rise to plain error), cert. denied, 423 U.S. 924, 96 S. Ct. 266, 46 L. Ed. 2d 249 (1975); People v. Lang, 782 P.2d 627, 647 (Cal. 1989) (noting that prosecutor's "urging use of evidence for a purpose other than the limited purpose for which it was admitted is improper argument"), cert. denied, 498 U.S. 881, 111 S. Ct. 224, 112 L. Ed. 2d 178 (1990); People v. Williams, 681 N.E.2d 115, 122 (Ill. App. Ct.) (holding that prosecutor's argument that defendant's guilt was proven by evidence admitted only to show police officers' investigative steps gave rise to error), appeal denied, 686 N.E.2d 1172 (Ill. 1997).

We view the prosecutor's brief reference to defendant's demeanor as proof of his guilt to be beyond the scope of fair comment on the evidence. The prosecutor was free to discuss the video-recorded segments in which defendant was alone but should have constrained any such discussion to the question of credibility. We caution prosecutors that when evidence is admitted for a limited purpose, comments in summation that exceed the bounds of that purpose must be avoided.

We do not conclude, however, that the comment was "clearly capable of producing an unjust result" giving rise to plain

33

error.  R. 2:10-2; see State v. Garrison, 228 N.J. 182, 201 (2017) (finding challenged jury instruction did not amount to plain error).  In light of the substantial evidence presented by the State, the prosecutor's brief comment on the video recording did not give rise to an unjust result and does not warrant reversal of defendant's conviction.

V.

Our concurring colleagues diverge from our opinion on a single point:  whether the trial court abused its discretion when it held that the probative value of the disputed evidence for the jury's assessment of defendant's credibility was not substantially outweighed by the risk of undue prejudice, and declined to bar that evidence under N.J.R.E. 403.  Post at ___ (slip op. at 11).  They consider the trial court's ruling under N.J.R.E. 403 to be error, but find it to be harmless error in light of the evidence presented by the State.  Post at ___ (slip op. at 11-12).  We briefly address the issues raised in their separate opinion.

Our colleagues are concerned about a broad application of our ruling in this case to future trials.  Our ruling is distinctly fact-sensitive and based on our standard of review. We do not determine, in this case, that every segment of video recording that shows a defendant alone in an interrogation room should be admitted under N.J.R.E. 401 and 403 for an assessment

34

of credibility, or on any other basis.  Indeed, we would not subscribe to such a bright-line rule.  We too would be concerned about the open-ended use of video recordings of a defendant, ostensibly for the assessment of demeanor and credibility.  A careful balancing of probative value and prejudicial effect is always required under N.J.R.E. 403.  Based on the facts before the court in this matter and the parties' distinct arguments, we view the trial court's ruling to be a reasoned application of N.J.R.E. 401 and 403 to a unique set of facts, not a "clear error of judgment" that is "so wide of the mark" as to warrant reversal.  See Koedatich, supra, 112 N.J. at 313; Carter, supra, 91 N.J. at 106.

The trial court made its ruling that the video recordings would be useful in the jury's assessment of this defendant's credibility in his interrogation in light of the sequence of events that led to those recordings.  The court did not confront a case in which officers video-recorded a defendant after they, or the defendant, terminated the interrogation.  To the contrary, immediately before they left the interrogation room, the officers discussed with defendant the prospect of continuing the discussion, if defendant wished to talk further.[6]  Minutes

---

[6]  After defendant said, "I might have a little secret in my mind that proves I'm innocent," and that he would not "say anything," the officer said that was "fine."  The officer added that if defendant changed his mind and wanted to "reach out" he should

35

later, the interrogation resumed.  Each of the disputed segments

-- the five-minute segment that is the focus of our colleagues'

concurring opinion, and the two shorter segments that followed -

- was recorded immediately after one phase of the interrogation,

and shortly before the next.  That is the setting in which the

trial court made its case-specific ruling pursuant to N.J.R.E.

403.  That ruling is the only determination that we review for

abuse of discretion.

Our colleagues note that the trial court did not

specifically refer to N.J.R.E. 403 when it made its ruling.

However, the absence of a specific reference to the Rule in the

trial court's oral decision does not signal that the court was

---

call the officer "from the County Jail tell your attorney to
reach out to me.  That's where it's going."  Defendant asked why
he was going to jail and was told he was going to be charged.
He questioned the fact that he was being charged and said that
"[t]his is a joke because I know I'm not guilty."  The officer
told defendant again that he would be going "in the cell for the
time being" but that if defendant thought about it and decided
he wanted to talk to the detectives, "[t]hen by all means talk
to an Officer get someone's attention and say I don't want to
remain silent anymore I want to talk.  And talk to someone."
Defendant asked the officer's name, and the officer provided it.
Defendant then stated, "[i]f I was to make a statement you know
what I would say.  I'm not guilty."  The officer responded that
if defendant changed his mind, "[y]ou know where to find us."
Defendant then asked, "[i]s it almost over? Can I leave?"  The
officer said "No.  You're not leaving," and left the room, at
which point defendant shouted toward the door that his detention
was "against the law."  A few minutes later, defendant knocked
on the door and summoned an officer, who escorted him from the
room.  Defendant then requested to speak to the Chief of Police,
and the interrogation resumed.

36

not applying N.J.R.E. 403's balancing test. It is clear that the court weighed the probative value of the evidence against its potential for prejudice in accordance with that Rule.

When the parties initially raised the issue before the trial judge and defense counsel generally expressed concerns about the video recordings, the judge specifically asked whether defendant's objection was based on N.J.R.E. 403, and was told that it was. In its decision the following day, the trial court expressly applied both components of the standard of that Rule. The court discussed the video recordings' probative value in the jury's assessment of credibility. It found that while the video recordings depicting defendant's demeanor while alone in the interrogation, like a defendant's confession, were prejudicial, they were not so prejudicial as to mandate exclusion. The trial court, in sum, applied N.J.R.E. 403's standard to this case and made a ruling that clearly fell within its discretion.

Our colleagues suggest that following our opinion, judges will admit any evidence showing changes in a defendant's demeanor on the ground that it is relevant to the defendant's credibility. If, in another matter, the State offers into evidence video recordings such as those at issue in this case, our trial judges can assess that evidence in accordance with N.J.R.E. 401's standard of relevancy, in light of the circumstances of the specific case.

37

Finally, our colleagues suggest that in summations in future cases, prosecutors may overstate the significance of a defendant's change in demeanor or otherwise mischaracterize the video-recorded evidence. Post at ___ (slip op. at 10-11). We do not share our colleague's concerns. This Court has defined what constitutes a prosecutor's proper comment on the evidence in summation, and what does not. See, e.g., State v. Bradshaw, 195 N.J. 493, 510 (2008); State v. R.B., 183 N.J. 308, 331-34 (2005); Timmendequas, supra, 161 N.J. at 584-89. Guided by that jurisprudence, our experienced criminal trial judges routinely scrutinize prosecutors' comments in summation, and appellate courts review those determinations. We respectfully note that if a summation in a future case raises the concerns identified by our colleagues, the trial court charged to oversee that case, guided by this Court's case law on prosecutorial misconduct and in accordance with the specific purpose of the evidence, will rule on the propriety of the prosecutor's comments. Here, we conclude that the prosecutor briefly exceeded the boundaries of proper comment on the evidence by suggesting that defendant's demeanor signified his guilt, but that the remarks in summation did not give rise to plain error.

VI.

38

The judgment of the Appellate Division is reversed, and the matter is remanded to the Appellate Division panel for determination of any issues that the panel did not resolve.


JUSTICES LaVECCHIA, FERNANDEZ-VINA, and SOLOMON join in JUSTICE PATTERSON's opinion. CHIEF JUSTICE RABNER filed a separate, concurring opinion, in which JUSTICES ALBIN and TIMPONE join.

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

       v.

ANTHONY K. COLE,

    Defendant-Respondent.

    CHIEF JUSTICE RABNER, concurring.

    In this case, officers interrogated defendant Anthony Cole for two hours and ended the interview.  Defendant cooperated throughout; he calmly answered questions and denied that he had committed a crime.  At the very end of the interview, defendant repeated that he was innocent and asked to be released.  The officers instead told him that he was headed to the county jail.  They then left the room.

    Over the objection of defense counsel, the jury watched a six-minute video recording of what happened next -- while defendant sat alone in the interrogation room <u>after</u> the interview had ended.  He was visibly upset, muttered to himself, and cursed.  Based on that evidence, the prosecution argued in summation that defendant manipulated his appearance during the interview because he was guilty.

1

The Appellate Division concluded that it was error for the trial court to admit the video in evidence. The majority disagrees. In my judgment, the jury should not have seen the video based on a straightforward application of the rules of evidence.

Under the circumstances, the video's probative value was limited. Its minimal relevance was substantially outweighed by the risk of undue prejudice and the danger that the recording would mislead the jury. As a result, the evidence should have been excluded under N.J.R.E. 403. Because the error was harmless in light of other strong evidence of defendant's guilt, I concur in the judgment.

I.

The facts are not in dispute. On December 16, 2009, the police arrested defendant for the attempted murder of David Donatelli several months earlier. Donatelli, a long-time employee of the South Plainfield Public Works Department, had been at the park preparing for the town's Labor Day fireworks display when someone slashed his neck with a knife. Because of the severe nature of the wound, Donatelli faced a substantial risk of death and was rushed to the hospital. After emergency surgery, he fortunately survived.

The police brought defendant to headquarters, where he waived his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.

2

Ct. 1602, 16 L. Ed. 2d 694 (1966). At trial, the jury watched the recorded statement of the interview that followed. Defendant responded to questions that two detectives posed and admitted that he went to the park on the night of the fireworks display. But he repeatedly denied that he attacked Donatelli. During the interview, defendant was responsive, talkative, and in control.

The interview lasted about two hours. At the end, defendant insisted that he was innocent, as he had throughout the interrogation. A detective then said the following: "[I]f you change your mind and you do want to reach out back to me[,] [c]all me from the County Jail[;] tell your attorney to reach out to me. That's where it's going." (emphases added). Defendant replied, "Why am I going to jail? . . . I'm not guilty." In response, the detective told defendant he was headed to "the cell for the time being" but, if he "want[ed] to talk to the detectives," he could "talk to an officer," "get someone's attention," and "talk to someone." Defendant again insisted that he was not guilty and asked, "Can I leave?" When he was told, "[y]ou're not leaving," he protested again. At that point, the detectives walked out of the interview room and the interview ended. Nothing in the record suggests this marked the start of a short break with more questions to follow; the interview was over.

The detectives left defendant alone in the room, and a camera continued to record him for almost six minutes. While alone, defendant appeared angry and distraught; he cursed, gestured, and muttered quietly to himself.

Defendant was then moved back to the booking room and, when the chief of police walked by in the hallway, defendant asked to speak with him. Defendant was escorted back to the interview room where a second interview took place. The jury watched a video of that statement as well. In it, defendant continued to insist that he was innocent. The police left defendant alone for ninety seconds during the second interview and for another two minutes at the end. Each time, he again muttered quietly to himself.

At trial, defense counsel argued that the State should not be allowed to introduce the six-minute portion of the video taken when defendant was alone. Counsel stressed that the evidence had no probative value and was prejudicial. He also argued that the jury was "not going to know what to do with" the ambiguous evidence. The State countered that the evidence offered context and would enable jurors to determine the witness's credibility during the prior statement.

The trial judge overruled the objection. He reasoned that, although the evidence

4

is subject to interpretation, I have to agree with the State that it's clearly conduct which relates to the statements previously made by this defendant.

The ability of a defendant to maintain control of himself, to respond in the manner in which he responded to police questions, to be demonstrative in his -- and appropriately demonstrative to questioning, and then when the defendant believes, I assume, knows that police aren't there, knows that it's being recorded, he mouths some of the curse words directly to the camera. Clearly, that's an indication of his demeanor and his conduct, and I think it is something that a jury should see in helping them understand [the] full tenor and context of the defendant's statement.

Aside from noting generally that "when a [d]efendant confesses, that also impacts negatively on a [d]efendant," the trial court did not reference N.J.R.E. 403 or weigh the disputed evidence's probative value against its risk of undue prejudice or of misleading the jury. The court ruled that both videos could be viewed in their entirety "with appropriate limiting instructions." The judge invited defense counsel to present an instruction. Counsel did not submit one, and the court did not give one to the jury.

The prosecution, in summation, stressed the importance of defendant's demeanor after the first interview, when he sat alone in the interview room. The State's arguments, repeated below, were more than a stray, passing reference:

5

All the statements that he made on that day, December 16th, are to be analyzed and considered in the context of the level of anger and disturbance that existed when the police leave the room. You observed it, members of the jury. He's the pillar of the community, the Mayor of the metropolis throughout the whole interview.

And on that board as soon as the police officers leave, he knows they got him and that's when his hand goes down his pants and he's mouthing "M F'er" to the world because he knew they got him. And you saw the switch and that's how you're to analyze the credibility of the statements made by the defendant on December 16th. Utilize those portions of his statement when law enforcement was not in the room.

Able to turn it on and off at his leisure, and unless guilty, there is no need to manipulate your presentation, your appearance to law enforcement. Manipulation is the process by which a guilty party attempts to get over.

II.

Relevant evidence is generally admissible. See N.J.R.E. 402. The threshold for relevancy is not high; to be "relevant," evidence must have "a tendency in reason to prove or disprove any fact of consequence to the determination of the action." N.J.R.E. 401.

Evidence of a person's demeanor will ordinarily meet that standard for a simple reason: how a person behaves can reveal whether he or she should be believed. If an individual reacts to an officer's questions in a hostile, defensive, or evasive

6

way, for example, a juror might reasonably think that the person's answers are not credible. That type of evidence is plainly relevant.

In this case, it is questionable whether evidence of defendant's demeanor during the six minutes he was alone after the interview can satisfy the relevancy test. The State contends that defendant's marked change in demeanor bears on credibility. But it can also mean a number of other things. In fact, there are multiple reasonable inferences that can be drawn from defendant's behavior after the interview.

As the State argues, defendant's change in mood may be a sign that his denials during the interrogation were not credible. In essence, as the State suggests, defendant may have been upset because he realized he had been caught, and he only revealed his true beliefs when left alone. Yet defendant may also have been upset because he believed he was innocent and law enforcement officers decided not to release him. Or the evidence could prove that he has a habit of mumbling to himself when alone -- as he did three times in the span of an hour.

Under the circumstances, the evidence is not powerful proof of defendant's guilt. At most, it is minimally probative.

If evidence is relevant, trial courts may be asked to assess whether "its probative value is substantially outweighed by the risk of . . . undue prejudice, confusion of issues, or

7

misleading the jury." N.J.R.E. 403. To be sure, the video portrays defendant in a very unflattering light, which underscores the risk of undue prejudice the video presented. Even more problematic, though, the type of evidence in question could well mislead a jury.

We trust jurors to evaluate a witness's credibility. When they hear trial testimony or review a suspect's recorded statement, jurors evaluate not only what the witness has said but also how he spoke. This case is different. Defendant was no longer being questioned; he was alone after an interview had ended. He did not make audible comments that might be admissible; he was agitated and upset.

Jurors, as factfinders, are routinely asked to decide what evidence means and choose among conflicting inferences. But there are no standards to guide a jury and help it understand a witness's ambiguous change of mood after an interrogation has ended. Left on its own, as the jury was in this case, this type of equivocal evidence could easily mislead a jury. Even with a limiting instruction, the jury could not interpret defendant's behavior after the interview without speculating about its meaning. It was therefore error to admit the evidence. In my view, that ruling was an abuse of discretion. See State v. Gorthy, 226 N.J. 516, 539 (2016).

Today's opinion expands the law but cites no authority that directly supports the broader approach it adopts.  The prosecution has not identified any case law that approves the use of evidence of a witness's demeanor <u>after</u> an interrogation has ended.  Nor does the majority rely on any such precedent.

The State and the Attorney General, as amicus, discuss <u>State v. Cook</u>, 179 <u>N.J.</u> 533 (2004).  That important decision considered the benefits of recording custodial interrogations and announced that the Court would establish a committee to "study and make recommendations on the use of electronic recordation of custodial interrogations."  <u>Id.</u> at 562.  The ruling in no way addressed the particular issue this appeal raises.  A year later, the Court adopted <u>Rule</u> 3:17 on "electronic recordation."  That rule, as well, does not answer the question now before the Court.

The State's reliance on <u>State v. Diaz-Bridges</u>, 208 <u>N.J.</u> 544 (2012), is also unavailing.  <u>Diaz-Bridges</u> analyzed a pretrial ruling that suppressed a defendant's taped statement.  The case turned on whether the defendant's request to speak with his mother during an interrogation amounted to an assertion of the right to silence.  <u>Id.</u> at 548.  The defendant spoke with the police on two separate occasions.  At different times during the lengthy second interrogation, the police took breaks and left defendant alone.  <u>Id.</u> at 554-55.  During a break after six

hours, with the recording equipment running, defendant began to cry and said he wanted to go home.  Id. at 555.

The trial court suppressed the entire second statement; the Appellate Division suppressed part of it.  Id. at 558.  The Court reversed after it concluded that, under all of the circumstances, defendant's request did not "constitute [an] invocation of his right to silence."  Id. at 572.

The State maintains that the Court's reversal of the suppression order in Diaz-Bridges amounted to a finding that the entire video should be admitted at trial.  But no party argued about whether portions of the video when defendant was alone -- during breaks in an interrogation -- should be played for the jury.  And the opinion simply does not consider the issue.

In short, neither Cook nor Diaz-Bridges supports the majority's ruling.

Today's outcome also leaves a number of unanswered questions.  Will it become common at trial for prosecutors to play recordings of defendants after an interview has ended -- while defendants sit alone in an interrogation room?  What will qualify as relevant evidence of demeanor in those instances?  If a witness responds to questioning in a pleasant tone but turns sullen when alone afterward, can that be presented to assail the witness's credibility?  Suppose a witness starts to cross his

10

arms and look about nervously after an interview?  Can prosecutors refer to that to offer context?

In my judgment, the risk of undue prejudice and of misleading the jury substantially outweighed the probative value of the six-minute video.  As a result, it should have been excluded under N.J.R.E. 403, and it was an abuse of discretion to admit the evidence.[1]

### III.

The majority ably recounts the strong evidence in the record against defendant:  police found gloves near the scene of the crime with both the victim's blood on the outside and skin cells on the inside that matched defendant's DNA; defendant's mother contradicted his alibi; and a friend testified that defendant had asked if he could get a ride home from the fireworks display, said he would be back in a few minutes, and never reappeared.  In light of that and other evidence, I do not believe the admission of the six-minute video "raise[s] a reasonable doubt as to whether [the error] led the jury to a

---

[1] The Appellate Division remanded for a new trial and suggested in a footnote that N.J.R.E. 403 posed a "formidable barrier." The panel, though, analyzed the disputed evidence under a line of authority about consciousness of guilt.  See State v. Williams, 190 N.J. 114, 125-29 (2007).  Because I believe the evidence was inadmissible in the first place, I do not reach that question.  That said, the prosecutor's arguments in summation went beyond his stated purpose in seeking to admit the evidence.

verdict it otherwise might not have reached." See State v. Sterling, 215 N.J. 65, 101 (2013). The error was harmless.

I therefore respectfully concur in the judgment.