**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2231-17T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

CHERYL A. SATORIS,

     Defendant-Appellant.

_____

Submitted December 12, 2018 – Decided September 13, 2019

Before Judges Nugent and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Indictment No. 11-07-0722.

Joseph E. Krakora, Public Defender, attorney for appellant (Molly O'Donnell Meng, Assistant Deputy Public Defender, of counsel and on the brief).

Charles A. Fiore, Gloucester County Prosecutor, attorney for respondent (Dana R. Anton, Senior Assistant Prosecutor, on the brief).

The opinion of the court was delivered by

NUGENT, J.A.D.

Defendant, Cheryl A. Satoris, appeals from the judgment entered on a jury's verdict convicting her of third-degree arson, N.J.S.A. 2C:17-1(b)(2), for which the trial court sentenced her to a three-year prison term. The court suspended the sentence[1] and imposed two conditions: "The only conditions of her . . . suspended sentence [are] to obtain a mental evaluation. . . . The second condition is to report as directed to probation. They'll set up a schedule to monitor the mental health component." The court made clear it was not ordering "full probation" and therefore was not directing defendant to "participate in all these other conditions of probation." Rather, the court understood that probation would monitor the mental health component of the suspended sentence, a

---

[1] The suspension of a state prison term—as distinguished from the suspension of the imposition of sentence—is not a disposition authorized by the New Jersey Code of Criminal Justice. "[T]he court may suspend the imposition of sentence" or impose a term of imprisonment. N.J.S.A. 2C:43:2. See also State v. Cullen, 351 N.J. Super. 505, 507-508 (App. Div. 2002). For purposes of this appeal, in which the sentence is not challenged, we will construe the judge's disposition to mean defendant's sentence was suspended for one year, with conditions, as authorized by the Code. See N.J.S.A. 2C:45-1. If there is any unresolved issue about the sentence, the parties can address it and the court can amend the Judgment of Conviction.

component authorized by N.J.S.A. 2C:45-1(b)(3).  The court also ordered that defendant pay certain financial obligations.

Defendant argues a single point on this appeal:

POINT I

THE ADMISSION OF DEFENDANT'S DELUSIONAL STATEMENTS ABOUT THE COMMISSIONER, THE ILLUMINATI, DYING THREE TIMES A DAY AND COMING BACK TO LIFE, AND PEOPLE TRYING TO KILL HER BY PUMPING GAS INTO HER APARTMENT VIOLATED DEFENDANT'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL. (Not raised below).

We affirm.

A Gloucester County grand jury charged defendant in a 2011 single-count indictment with second-degree aggravated arson, N.J.S.A. 2C:17-1(a).  Two years later, a jury convicted her of a lesser-included offense, third-degree arson, N.J.S.A. 2C:17-1(b((2).  On appeal, we vacated the judgment of conviction and remanded the matter for a new trial.  State v. Satoris, No. A-1079-13 (App. Div. July 11, 2016).  Defendant stood trial again in 2017, and the jury convicted her again.  The court imposed its sentence and this appeal followed.

The parties are well acquainted with the facts, which we detailed in our previous opinion and need not repeat here in their entirety given the single, narrow issue before us.  The parties' primary dispute at defendant's second trial

3

was whether a January 6, 2011 early morning fire that started in a living unit occupied solely by defendant, one of eight units in the two-story Washington Township building the fire destroyed, was ignited accidentally or deliberately. On the morning of the fire, defendant told investigators a candle had accidentally ignited a blanket after she had gone to sleep. The parties each presented a cause and origin expert on the issue, and each expert came to a different conclusion.

The State's expert was Washington Township's Fire Marshall and Captain. He arrived at the fire scene shortly after the fire department received the initial call. During the ensuing investigation, the Captain and an investigative team eliminated all accidental causes. They observed an irregular burn pattern—"an uneven type of pattern"—on a plywood floor in defendant's unit and on tile leading toward the front door. They also found a metal can beneath blankets in the sunroom where defendant had slept. The metal can was sent to the police laboratory where a forensic scientist conducted tests that were positive for a medium petroleum product, that is, something the equivalent to charcoal starter, paint thinner, or mineral spirits. The Captain concluded "the fire was incendiary, by an ignitable liquid being applied to the sunroom area and leading towards the front entry door."

 A-2231-17T2

Defendant's cause and origin expert was a fire and arson investigator who worked for the Department of Homeland Security as well as the San Diego Community College District and the Center for Arson Research. She taught at police and fire academies on various subjects, including fire and arson investigation and cause and origin of fires. She agreed the fire started in the sunroom of defendant's unit but she disagreed that the fire was deliberately set. In her opinion, the fire was accidental. She did not believe investigators on the scene had sufficiently ruled out accidental causes. She explained that the irregular burn pattern observed by investigators could have had any number of causes, and she believed the cause of the fire was consistent with defendant's statement to investigators. Because investigators did not test and compare parts of the floor without the irregular burn pattern with parts of the floor with the regular burn pattern, and because no floor samples of the floor area with the irregular burn pattern were tested for an accelerant, defendant's expert did not believe one could conclude the fire was set deliberately.

Defendant made the statements at issue on appeal to a resident in a neighboring unit the day before the fire. The State called the neighbor as a witness. He said he was walking from his unit to his car when defendant called him over to the steps where she was sitting. She asked if he was part of the

conspiracy to kill her. She explained that the Commissioner, the Illuminati, and other people were pumping gas into her unit, trying to kill her. She also said she died three times a day and came back to life. She asked if his wife and grandson were part of the conspiracy. He replied they were not, and she said she thought she heard his grandson and another child in her attic, moving around, pumping gas into her unit, so she went to her attic to check it out. Somehow, one fell through the roof and made a big hole in her kitchen. Defendant asked the neighbor if he had renter's insurance, because those units were going to burn down. He did not take her seriously.

Defendant did not object to the testimony. In fact, she had not objected to the testimony during her first trial and she did not raise it as an issue on her appeal from her first conviction. She now claims the trial court should have—presumably sua sponte—conducted some type of hearing or made an evaluation under N.J.R.E. 403 and determined whether the statements' probative value was substantially outweighed by undue prejudice; perhaps with the exception of her statement that the units were going to burn. She also argues the statements should have been excluded under N.J.R.E. 404(b), which precludes certain propensity evidence, namely, other crimes, wrongs, or acts.

Generally, our trial courts are vested with broad discretion in determining whether proffered evidence is relevant, and if so, whether it should be excluded under N.J.R.E. 403 because its probative value is substantially outweighed by the risk of undue prejudice, confusion of issues, misleading the jury, or other considerations. State v. Cole, 229 N.J. 430, 449 (2017) (citing N.J.R.E. 403). For that reason, we review such decisions for abuse of discretion. Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383-84 (2010). Here, by failing to object, defendant deprived the trial judge—the person best suited to consider defendant's objections and balance the probative value of her statements against any potential for undue prejudice—of the opportunity to do so; and thus has deprived us of the benefit of the trial judge's evaluation and of a proper record for appellate review.

Moreover, given defendant's concession that her statement that the units were going to burn was both probative and admissible, trial counsel—different from appellate counsel—may have had a sound tactical reason for seeking to have her statements admitted in their entirety. Indeed, it is apparent from defense counsel's cross-examination of defendant's neighbor that counsel sought to demonstrate that none of defendant's statements could be taken seriously in view of their bizarre nature.

A-2231-17T2

In any event, on the record before us we cannot conclude defendant's statements about a conspiracy to kill her were clearly capable of producing an unjust result. R. 2:10-2. Defendant's arguments are without sufficient merit to warrant further discussion. R. 2:11-3(e)(2). We thus affirm her conviction.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2231-17T2